DRY DOCK SAVINGS INSTITUTION, Appellant, *v.* 103 EAST 75TH ST. APARTMENTS, INC., Respondent.

Argued January 8, 1947; decided April 17, 1947.

*Ralph M. Carson, John H. Van Surdam* and *Taggart Whipple* for appellant. I. As a matter of construction the two letters **are not agreements** extending the maturity date, but constitute

merely acts of leniency, remission and waiver on the part of the mortgagee. (*Metropolitan Savings Bank* v. *Tuttle,* 290 N. Y. 497; *City Bank Farmers Trust Co.* v. *Ardlea Corp.,* 267 N. Y. 224; *Becker* v. *Faber,* 280 N. Y. 146; *Johnson* v. *Meyer,* 268 N. Y. 701; *Rochester Trust & Safe Deposit Co.* v. *Hatch,* 273 N. Y. 507; *Bank of New York* v. *Blumenthal,* 285 N. Y. 598; *White* v. *Wielandt,* 259 App. Div. 676, 260 App. Div. 871, 286 N. Y. 609; *East River Savings Bank* v. *245 Broadway Corp.,* 284 N. Y. 470; *Greenwich Savings Bank* v. *Cabin Holding Corp.,* 176 Misc. 89.) II. As a matter of law the letters do not fall within the moratorium legislation because they are mere agreements to accept a lower rate of interest for a limited period of time. (*Title Guarantee & Trust Co.* v. *2846 Briggs Ave.,* 283 N. Y. 512; *East River Savings Bank* v. *245 Broadway Corp.,* 284 N. Y. 470.)

*George W. Martin* for Bank of New York, *amicus curiæ,* in support of appellant's position. I. The letters cannot constitute an extension agreement. II. The judicial denomination of the letters is labored and works injustice. III. The effort of the Legislature to permit interim arrangements without penalty has been defeated. (*Title Guarantee & Trust Co.* v. *2846 Briggs Ave.,* 283 N. Y. 512.)

*George L. Allin* and *Joseph R. Shaughnessy* for respondent. I. The letter of January 10, 1941, was both a modification of the then existing extension agreement and a further extension of the mortgage. (*Mortgage Commission* v. *Fay,* 255 App. Div. 622, 281 N. Y. 637; *Title Guarantee & Trust Co.* v. *2846 Briggs Ave.,* 283 N. Y. 512; *O'Brien* v. *Young,* 95 N. Y. 428.) II. The letter of December 21, 1942, again modified the agreement as to interest rate and continues to bind plaintiff to that rate until the end of the emergency period, July 1, 1946. (*Klein* v. *Simons Mfg. Co.,* 288 N. Y. 482.) III. The existing mortgage moratorium legislation does not operate as an extension of the due date of a mortgage nor does it modify an existing contract. (*Kress* v. *Central Trust Co.,* 246 App. Div. 76, 272 N. Y. 629; *Royal Court Realty Co., Inc.,* v. *Thomas,* 259 App. Div. 313; *Maguire & Co.* v. *Lent & Lent,* 277 N. Y. 694; *Gelfert* v. *National City Bank,* 313 U. S.

221; *City Bank Farmers Trust Co.* v. *Ardlea Corp.,* 267 N. Y. 224.)

Lewis, J. The plaintiff-appellant, Dry Dock Savings Institution, is the holder of a consolidated bond and mortgage — originally in the amount of $350,000 — which is a lien upon premises now owned by the defendant-respondent, 103 East 75th Street Apartments, Inc. By this action the plaintiff seeks a declaratory judgment fixing 4% as the interest rate due upon its mortgage and payable at that rate by the defendant since November 1, 1943.

At Special Term the plaintiff's motion for judgment on the pleadings was denied and judgment was granted in the defendant's favor dismissing the complaint and adjudging that, during the statutory emergency period provided by article 65 of the Civil Practice Act, the annual rate of mortgage interest due to the plaintiff from the defendant shall be 1% and additional interest, if earned, not to exceed 2% per annum from November 1, 1942, payable quarterly until the termination of the statutory emergency. At the Appellate Division the order of Special Term was unanimously affirmed and a judgment was entered accordingly. The case is here on appeal by the plaintiff by our leave.

Both parties concede that by a formal extension agreement dated February 2, 1937, the maturity date of the consolidated mortgage — the original interest rate of which was 5% — was extended to August 1, 1941, and the interest rate was reduced to 4% conditioned upon the amortization of principal in stated amounts.

Thereafter two letters addressed by the plaintiff to the defendant gave rise to this action. Our problem is to determine whether those letters constituted instruments in the nature of extension agreements which, within the provisions of section 1077-cc of the Civil Practice Act, required the plaintiff to accept a lower rate of mortgage interest until the end of the statutory emergency.

The first of the two letters, written by the plaintiff to the defendant on January 10, 1941, contained the following statement by the plaintiff:

" In accordance with a discussion with your representative, Mr. Bancroft, we will continue to carry the present default

of $3,101 in interest payments to December 31st, 1941. We will also accept interest from November 1st, 1940 to November 1st, 1941 at 3% provided $1,625 is paid on February 1st, 1941 and a like amount on the first days of May, August and November 1941.

" Upon the payment of an additional $3,500 in reduction of the principal on or before December 31st, 1941 we agree to waive the deferred interest arrears of $3,101.

" We would appreciate having your acceptance on this arrangement."

Pursuant to that first letter annual interest at the reduced rate of 3% was paid by the defendant and accepted by the plaintiff until November 1, 1942 — a date after the maturity. of the mortgage as formally extended.

In the second of the two letters, written to the defendant on December 21, 1942, the following statement was made by the plaintiff:

" We desire to set forth our understanding of the arrangement that is to be in force for the period from November 1st, 1942 to November 1st, 1943.

" A — on our part we are to accept interest at 1% the remainder being waived unless earned. The maximum interest rate is to be 3%. All surplus earnings are to be accepted as amortization but are not to exceed $6,500.

" B — on your part it is our understanding that all cash on hand and all income to the ownership regardless of source is to be used to meet the operating and fixed charges of the property. You are to furnish us with a monthly statement that we may observe the progress of the property.

" We do not intend that the foregoing is an extension of the maturity of the loan. It is merely an arrangement, under which the loan is running past due — i.e. on an open basis — should it remain with us."

In accord with the letter last quoted above payments of interest were made by the defendant until November 1, 1943, after which plaintiff claimed interest at the rate of 4% as fixed by the formal agreement of February 2, 1937, which extended the maturity date until August 1, 1941. When the defendant refused to pay more than the rate fixed by the plaintiff's second

letter, of December 21, 1942 — viz., 1% with 2% additional if earned — the present action was instituted.

The refusal by the defendant to pay 4% interest on the mortgage was put upon the ground that each of the two letters quoted above amounted to an extension agreement within section 1077-cc of the Civil Practice Act. That statute provides: " § 1077-cc. *Interest on evidence of indebtedness originally contracted for simultaneously with mortgage.* Notwithstanding any inconsistent provisions of this act or of any other general or special law, the rate of interest upon any loan, indebtedness, bond, extension agreement, collateral bond, or other evidence of indebtedness or liability, if the indebtedness originated or was originally contracted for simultaneously with a mortgage upon real property and is secured solely by such mortgage, shall not be increased by reason of the maturity of such obligation during the emergency period as defined in section ten hundred seventy-seven-g of this act, but shall continue after such maturity at the rate specified in such obligation until the expiration of such emergency period."

Considering the two letters separately we conclude that as to the first (the letter of January 10, 1941) the courts below were right in ruling that the plaintiff thereby extended the mortgage until November 1, 1941. Upon that branch of the case we must consider section 1077-a of the Civil Practice Act, which provides in part: " § 1077-a. *Foreclosure for principal defaults suspended.* During the period of the emergency as defined in section ten hundred seventy-seven-g * * * no action or proceeding for the foreclosure of a mortgage upon real property * * * shall be maintainable, solely for or on account of a default in the payment of principal secured by such mortgage * * * although the payment of such principal * * * may be due by the terms of such agreement, bond or mortgage * * *.

" Notwithstanding the foregoing provisions of this section, any installments or amortization of principal, or principal which, by the terms of such agreement, bond or mortgage, have become due or shall become due and payable prior to July first, nineteen hundred thirty-four shall become and be due and payable six months after the expiration of such emergency period * * *.

" Notwithstanding the foregoing provisions of this section, any installments or amortization of principal, or principal which, by the terms of such agreement, bond or mortgage, shall become due and payable between July first, nineteen hundred thirty-four and July first, nineteen hundred thirty-seven, inclusive, shall become and be due and payable one year after the expiration of such emergency period ".

We have seen that a formal agreement between the parties had extended the mortgage in suit to *August 1, 1941*. From that fact it follows that neither the second nor the third paragraphs of section 1077-a, quoted in part above, applies in this case and that the only portion of section 1077-a which is here applicable is the first paragraph. However, the first paragraph does not extend the maturity date of the mortgage. It does no more than forbid its foreclosure by reason of default in principal payments during the then existing emergency period which, on January 10, 1941 — the date of the first letter — extended only until July 1, 1941. (See § 1077-g as amd. by L. 1940, ch. 566.) It follows that *on the date of plaintiff's first letter* (January 10, 1941), which stated the bank's agreement to reduce the mortgage interest conditioned upon certain principal payments until November 1, 1941, the statutory emergency then effective terminated on *July 1, 1941* — before the date (August 1, 1941) to which the maturity of the mortgage had been formally extended and before the date (November 1, 1941) when the period terminated within which the plaintiff had agreed to accept mortgage interest at a reduced rate conditioned upon principal payments. It thus appears that on the date (January 10, 1941) when the plaintiff's first letter was written, there was no moratorium statute which prevented foreclosure of the mortgage on or after July 1, 1941. (The statute which extended the emergency from July 1, 1941 to July 1, 1943 [L. 1941, ch. 782] did not become effective until April 27, 1941.)

In those circumstances we cannot agree with the plaintiff's assertion that its first letter did not extend the maturity date of the mortgage and was no more than an act of leniency extended to its debtor. The plaintiff had expressly provided in its letter of January 10, 1941, that it would " accept " payments of principal, and of interest at the reduced rate of 3% until *November 1, 1941* — three months *after* the extended

maturity date of the mortgage (August 1, 1941). Implicit in that first letter was an agreement by the plaintiff that payment of the entire principal would not be enforced until on or after November 1, 1941.

In its prayer for relief the plaintiff asks for a declaratory judgment that it is " * * * entitled to interest on its mortgage at the rate of 4% since November 1, 1943 to date and thereafter." The legal effect of plaintiff's second letter (December 21, 1942) thus becomes important. In determining whether the second letter served to extend to November 1, 1943, the maturity date of the mortgage we may not disregard the closing statement by plaintiff — " We do not intend that the foregoing is an extension of the maturity of the loan. It is merely an arrangement, under which the loan is running past due — i.e. on an open basis — should it remain with us." Finding in the language thus chosen by the plaintiff a clear and unequivocal statement of its intention not to effect thereby an extension agreement, we regard the second letter as nothing more than an act of leniency by the plaintiff toward the defendant as its debtor by which the plaintiff waived performance by the defendant of part of the latter's obligation. (See *Becker. v. Faber,* 280 N. Y. 146, 150–151.) Our conclusion in that regard is reinforced by the last clause of the letter — " * * * should it remain with us " — which indicates clearly that if the mortgage is transferred by the plaintiff the arrangement will terminate. The provision in the plaintiff's second letter which permits " amortization " in the amount of $6,500 does not deplete the impelling force of plaintiff's declaration, quoted above, that it did not intend the second letter to be an extension of the maturity of the loan. In that connection it should be noted that amortization in that specific amount is not required, nor is a rate of amortization or a time of payment specified.

The judgments should be reversed, without costs, and the action remitted to Special Term for further proceedings not inconsistent with this opinion.

LOUGHRAN, Ch. J., CONWAY, DESMOND, THACHER, DYE and FULD, JJ., concur.

Judgments reversed, etc.