660

HICKIN et al. v. CENTRAL HANOVER BANK & TRUST CO.

No. 214, Docket 20517.

Circuit Court of Appeals, Second Circuit.

June 26, 1947.

William H. Hicken, pro se (William H. Hicken and Edward A. Carlin, of Bethesda, Md., of counsel), for petitioner Hicken.

Chadbourne, Wallace, Parke & Whiteside, of New York City (Charles B. Lauren, of New York City, of counsel), for Manufacturers Trust Co.

Rathbone, Perry, Kelly & Drye, of New York City (Francis S. Bensel and W. Frederick Knecht, both of New York City, of counsel), for respondent-appellee Central Hanover Bank & Trust Co.

Before L. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The trustee of 80 John Street Corporation, a debtor in proceedings for reorganization under Chap. X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., in the District Court for the Southern District of New York and the holder of a second mortgage on the debtor's real property have appealed from an order fixing the rate at which interest is payable on a consolidated first mortgage on such property.

When the debtor's petition for reorganization was approved on September 14, 1945 the Central Hanover Bank and Trust Company owned and held a consolidated first mortgage on the premises of the debtor at 80 John St., in the City of New York, and the Manufacturers Trust Company held a second mortgage thereon as indenture trustee to secure the payment of certain of the debtor's bonds.

The debtor had purchased the property in 1928 subject to the first mortgage which then bore interest at 5% and was to mature on April 1, 1933. Its maturity date was by agreements duly executed extended to October 1, 1939, and the interest rate had by then been reduced to 4½%. Thereafter, the mortgagor and the mortgagee made five so-called letter agreements, each of which covered one of the years October 1, 1939 to October 1, 1941 inclusive. These letter agreements changed the interest rate for

the first two of these years to 4% and for the last three to 3½% upon conditions therein stated. Otherwise they were all of like effect, and it is agreed that the following one is typical of them all.

"Central Hanover Bank and Trust Company 70 Broadway, New York, N. Y.

August 25, 1943

The 80 John Street Corporation
76 William Street,
New York, N. Y.

Gentlemen:

With reference to the bond and mortgage secured by premises 80 John Street, New York City and confirming our recent negotiations, if you accept the following proposal by signing and returning the enclosed copy of this letter and if we obtain the consent thereto of the interested parties for whom we act,

1. Interest upon said bond and mortgage will continue to accrue at the rate of 5% per annum and the maturity date thereof shall remain unaffected;

2. Interest shall be payable January, April, July and October 1;

3. On each quarter-annual interest date for the period October 1, 1943 to October 1, 1944 we shall accept in full payment of interest for the then preceding three months an amount computed as though interest were at the rate of 3½% per annum provided that:

(a) Each such interest payment is promptly paid;

(b) All interest payments previously due during the period of this arrangement have been paid promptly;

(c) All taxes, assessments and water rates on the mortgaged premises have been fully paid on or before the last day on which payment can be made without penalty;

(d) You submit a certified statement of the operations of the property for the year ending October 1, 1944 together with all surplus earnings after payment of interest on the first mortgage, to be applied in reduction of the principal of the mortgage;

(e) The mortgagor will furnish war damage insurance for the benefit of the mort-

gagee in an amount satisfactory to the mortgagee;

(f) The mortgagor will reimburse the holder of this mortgage in the sum of $5 in each 12 months period to defray the cost and expense of making physical inspections of the property.

Notwithstanding acceptance hereof by you as hereinbefore provided, this proposal shall not become effective until you receive written notice from us that the above mentioned consent of the interested parties for whom we act has been obtained.

If the present New York Mortgage Moratorium Statutes shall be amended or abrogated in any way on a date prior to October 1, 1944 or if the effective period thereof shall terminate on a date prior to October 1, 1944 this arrangement shall be and shall be deemed to have become inoperative on such prior date.

It is and will be our mutual intent that such arrangement will not constitute a reduction of the 5% interest rate now in force or an extension of the maturity date of the mortgaged indebtedness, being in no event applicable beyond the duration of the existing statutory suspension of the mortgagee's remedies thereon.

Will you kindly address your reply to the attention of B. F. Murphy, Mortgage Department.

Very truly yours,
C. H. Bush
Asst. Vice President

Enclosure
Accepted Aug. 27, 1943
80 John Street Corporation
by David Cohen
Secretary"

The mortgagor complied with all of the conditions and paid the interest at the rates specified until October 1, 1944. Thereafter the mortgagee demanded, and the mortgagor paid, interest at the rate of 4½% up to the quarter beginning July 1, 1945. Before another quarterly payment of interest was due the reorganization proceedings of the mortgagor were commenced and the appellant trustee was appointed and duly qualified.

On January 2, 1946, the mortgagee moved in the reorganization proceedings for

an order directing the trustee to pay interest to it at the rate of 4½% for the last two quarters of 1945 and two quarter-annual installments of statutory amortization, as provided by the New York Mortgage Moratorium Act, Civil Practice Act, § 1077-a et seq., for the quarters beginning on October 1, 1945 and January 1, 1946 respectively. The interest was ordered paid and consideration of the amortization payments was held in abeyance pending the report of accountants. After that report was filed the mortgagee moved for an order directing the trustee to pay interest to it at the rate of 4½% for the quarter beginning January 1, 1946.

Thereafter the trustee took the action which resulted in the order from which this appeal was taken. On May 16, 1946 he filed a petition for an order declaring that the interest was payable on the mortgage at the rate of 3½% after October 1, 1944 as provided in the last letter agreement instead of at the rate of 4½% at which it had been fixed by the last formal extension of the mortgage executed on May 13, 1937. He also asked to have the previous order directing him to pay interest at 4½% resettled and any excess interest paid credited on the interest account. The mortgagee moved to dismiss the trustee's petition for lack of jurisdiction. The motion of the mortgagee for interest at 4½% for the quarter beginning January 1, 1946 and the trustee's petition for the declaratory order were consolidated for hearing, and after that the order was entered granting the mortagee's motion and denying the trustee's petition in so far as it sought a determination that the interest on the mortgage was payable after October 1, 1944 at 3½% and this appeal followed.

█ The reorganization court had jurisdiction. In re Cuyahoga Finance Co., 6 Cir., 136 F.2d 18. The point made as to lack of jurisdiction has not been seriously pressed and needs no further comment.

█ It is plain that the rate of interest payable on the mortgage is governed by New York law.

Sec. 1077-cc of the New York Civil Practice Act provides that: "Notwithstanding any inconsistent provisions of this act or of other general or special law, the rate of interest upon any loan, indebtedness, bond, extension agreement, collateral bond, or other evidence of indebtedness or liability, if the indebtedness originated or was originally contracted for simultaneously with a mortgage upon real property and is secured solely by such mortgage, shall not be increased by reason of the maturity of such obligation during the emergency period * * * but shall continue after such maturity at the rate specified in such obligation until the expiration of such emergency period." The emergency period has been extended by legislation to July 1, 1947.

Decision must turn upon whether the appellants are right in their contention that the last two letter agreements, the terms of which are shown by the one above quoted amount to an extension agreement which under the statute continued the lower rate of interest throughout the emergency period. If the letters do not the order should be affirmed.

Both sides rely upon the recent decision of the New York Court of Appeals in Dry Dock Savings Institution v. 103 East 75th Street Apartments, Inc., 296 N.Y. 280, 72 N.E.2d 894, 895. That case involved the effect of two letter agreements the first of which was held to create an extension while the second was not. The appellee finds support for the order in that part of the New York court's decision which deals with the effect of the second letter and so do we. It was distinguished from the first of the two letters because it was ended as follows: "We do not intend that the foregoing is an extension of the maturity of the loan. It is merely an arrangement, under which the loan is running past due—i.e. on an open basis—should it remain with us."

█ Though the language used in our last two letter agreements, which controls decision on this appeal, was somewhat different from that in the quotation just given, we think its legal effect is the same and that the reduction of the rate of interest upon the condition stated was limited to the period which ended when the last year covered by the letters ended. The language is, "It is and will be our mutual intent that

such arrangement will not constitute a reduction of the 5% interest rate now in force or as extension of the maturity date of the mortgaged indebtedness, being in no event applicable beyond the duration of the existing statutory suspension of the mortgagee's remedies thereon." That seems to provide about as plainly as it could be done, with words, that the maturity date of the mortgage was not extended; nor the rate of interest it carried in accordance with the terms of the last formal extension reduced, except for the limited period covered by the letter agreements themselves and upon the conditions applicable to that period.

We find nothing in Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237 to the contrary. There it was held that it would be inequitable to enforce a covenant to pay interest upon interest, but we can see nothing inequitable to the holder of a second mortgage in determining that the interest payable on a first mortgage is not governed by the provisions of a certain New York statute.

Affirmed.