## In re PRUDENCE–BONDS CORPORATION.
### No. 409.

Circuit Court of Appeals, Second Circuit.
May 6, 1935.

Carter, Ledyard & Milburn, of New York City (J. M. Richardson Lyeth and John P. Allee, both of New York City, of counsel), for president and directors of the Manhattan Co.

Cullen & Dykman, of Brooklyn, N. Y. (Ralph W. Crolly, of Brooklyn, N. Y., of counsel), for Brooklyn Trust Co.

Delafield, Thorne & Marsh, of New York City (George H. Porter, of New York City, of counsel), for City Bank Farmers' Trust Co.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Tom Garrett and James A. Sweet, both of New York

City, of counsel), for Guaranty Trust Co. of N. Y.

Newman & Bisco, of New York City (Frank J. Gillis, of New York City, of counsel), for Manufacturers' Trust Co.

Milbank, Tweed, Hope & Webb, of New York City (Hugh L. M. Cole, of New York City, of counsel), for Chase National Bank of City of New York.

Sullivan & Cromwell, of New York City (Gordon Tweedy, of New York City, of counsel), for Marine Midland Trust Co. of New York.

Larkin, Rathbone & Perry, of New York City (Henry E. Kelley, of New York City, of counsel), for Central Hanover Bank & Trust Co.

Cotton, Franklin, Wright & Gordon, of New York City (Robert M. Becket and Paul W. Williams, both of New York City, of counsel), for Chemical Bank & Trust Co.

Powell & Ruch, of New York City, for Prudence-Bonds Corporation.

George C. Wildermuth, of Brooklyn, N. Y., for Charles H. Kelby and Clifford S. Kelsey, as trustees of Prudence-Bonds Corporation.

Archibald Palmer, of New York City (Archibald Palmer, Harry D. Glicksman, and Sydney Basil Levy, all of New York City, on the brief), for intervening creditors.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The debtor has outstanding eighteen separate bond issues aggregating in principal amount about $56,000,000, and 54 certificate issues aggregating in principal amount about $53,000,000. The order appealed from affects the appellants, acting as respective trustees, under sixteen of these eighteen bond issues. Each of the bond issues is secured by a separate indenture between the debtor and a trust company or bank, under which the debtor pledged first mortgages upon real estate. The sixteen indentures are substantially the same, and one, dated April 1, 1925, securing the Fifth Series of Prudence Bonds, under which the appellants president and directors of the Manhattan Company are trustees, may be taken as typical of all. Three separate plans of reorganization have been proposed by the debtor in the same proceedings under section 77B of the Bankruptcy Act (11 USCA § 207) and cover the debtor's Fifteenth Series Bond Issue, the Seneca Issue of Mortgage Participation Certificates, and its Westover Issue of Mortgage Participation Certificates.

Referring to the Fifth Series trust indenture, the debtor was given the right to service the collateral, including the right to make collections and to foreclose the pledged mortgages, until an event of default occurred, when, it was provided, the debtor, upon the request of the trustees, would surrender to the trustees the prosecution and maintenance of any foreclosure action which the debtor might have begun, and would deliver all papers in such action to the trustee (section 5, art. 1). Events of default included nonpayment of interest and nonpayment of principal, and are referred to in section 1, art. 4. Out of the moneys, resulting from the sale or foreclosure of the trust fund or any part thereof, or moneys collected or held by the trustee after an event of default, reasonable compensation, costs, and expenses of the trustee and its attorneys and taxes and liens were to be paid. The surplus was to be applied to the payment of the principal indebtedness of all the Prudence Bonds issued thereunder and outstanding, and the interest accrued thereon, prorated without priority of principal over interest or of interest over principal, or of one bond over another bond. Section 6, art. 4.

The order appealed from restrained the appellants from foreclosing, selling or encumbering the pledged mortgages, or from distributing the cash on hand to the bondholders or to the trustees or their agents or attorneys, except in each case upon application to the district court, which could then pass upon the wisdom or propriety of any such foreclosure, distribution, or payment, after the trustees of the debtor had been given opportunity to be heard.

Appellants' contention is that pending the consummation of the plan of reorganization they, as trustees, are permitted to exercise all the rights which they have under their trust indentures, as enforceable prior to the proceedings under section 77B. The appellees' contention is that the court, while entertaining and considering a plan of reorganization, has the power to grant a restraining order, as it did, in the interest of conserving the interest of all for the purpose of rendering effectual a plan of reorganization proposed or to be proposed. Appellees urged that such power is neces-

sary to guard against the appellants exercising an unrestrained power to foreclose mortgages, destroy the res, the property to be reorganized, or to distribute the cash on hand to bondholders or others as they may wish in the absence of the guidance of the court which has taken possession of the property.

The mortgages, in the physical possession of the appellants, as trustees, constituted collateral owned by the debtor subject to the lien of the indentures, and are held as security for the payment of the bonds issued under the indentures. These indentures are, in effect, mortgages or pledges of the debtor's property [In re Prudence Bonds Corp. (Bertha Radin v. Chemical Bank & Trust Co.) (C. C. A.) 75 F.(2d) 262], and the cash held by the appellants represents receipts derived from collateral thus pledged by the debtor under the indentures and stands on the same basis as the mortgages. The cash is held for the bondholders, because the trust indentures so provided, but until it is paid over, it is subject to the lien of the indentures, and, in all forms of property so subject, the debtor as pledgor has an equity. While the property is thus held, and a reorganization is proposed or pending, the collateral is in custodia legis, with full power in the court, in its administration of the estate of the debtor pending reorganization, to control and direct the administration of this collateral.

Prior to the enactment of section 77B, the property of a bankrupt was not considered as being in the custody of the bankruptcy court unless, at the time the petition was filed, it was in the actual or constructive possession of the bankrupt. "All property in the possession of a bankrupt of which he claims the ownership passes, upon the filing of a petition in bankruptcy, into the custody of the court of bankruptcy." Ex parte Baldwin, 291 U. S. 610, 54 S. Ct. 551, 553, 78 L. Ed. 1020. Upon adjudication title thereto vests in the trustee with actual or constructive possession. Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L..Ed. 645. Section 77B has amended the Bankruptcy Law so that now, by subdivision (a), if the petition or answer is approved, the court "shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section." 11 USCA § 207 (a). Formerly,

the court, while having jurisdiction of whatever equity a bankrupt might own in pledged property, did not have jurisdiction over the property itself. The property was in the possession of the pledgee, and the bankrupt having neither real nor constructive possession thereof, the bankruptcy court had no jurisdiction over it. Taubel, etc., Co. v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770. But the present grant of jurisdiction, under section 77B, contains no limitation which excludes property subject to a lien or mortgage.

Subdivision (b) (1) of section 77B of the act, 11 USCA § 207 (b) (1), provides that a plan of reorganization shall include provisions modifying the rights of creditors generally whether secured or unsecured. The former bankruptcy act and section 77B differ fundamentally in the purposes sought to be accomplished. The former provided for liquidation, while the latter seeks a reorganization by means of rehabilitation. Rehabilitation of a debtor demands that the court have possession of all the property of the debtor, no matter what may be the nature of the debtor's possession, or whether the debts are secured or unsecured.

That the court, by virtue of its jurisdiction over the debtor's property wherever located, has jurisdiction over collateral pledged by it as security, is now definitely settled by Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pac. R. Co., 55 S. Ct. 595, 79 L. Ed. ——, April 1, 1935, and In re Prudence Bonds Corp. (Bertha Radin v. Chemical Bank & Trust Co.) (C. C. A. 2, Feb. 11, 1935) 75 F.(2d) 262. The court of reorganization can bring within its jurisdiction property covered by, mortgage or pledge, when a plan covering it has been adopted and confirmed. And prior thereto, property held by a pledgee, in which the debtor has an equity, is likewise within the court's jurisdiction, so as to prevent a disposition by foreclosure of the pledge or mortgage. For the purpose of reorganization, the court should take complete charge of property in order that it may from the beginning, and through all the intermediate steps of reorganization, so administer the property as to achieve the desired rehabilitation.

Moreover, the order complained of in no way embarrasses the trustees in the performance of their duties. The court below has provided that application may be made to it to administer the moneys received as equity and justice may demand. To permit

the untrammeled right of the appellants to foreclose underlying mortgages might well destroy equities in pledged property, and embarrass the reorganization of the collateral thus held. It might destroy all chances of reorganization. If in a proper case the District Court should decline to make payments to certificate holders, there is power of review, and errors made may be corrected.

Order affirmed.