## FIRST NAT. BANK IN HOUSTON, TEXAS et al. v. LAKE.

### No. 6469.

United States Court of Appeals
Fourth Circuit.

Argued July 2, 1952.

Decided Oct. 7, 1952.

Writ of Certiorari Denied Jan. 5, 1953.
See 73 S.Ct. 337.

Soper, Circuit Judge, dissented.

Hilary W. Gans, Baltimore, Md. (Cook, Ruzicka, Veazey & Gans, Baltimore, Md., on the brief), for appellants.

Alexander Harvey, II, and Frank B. Ober, Baltimore, Md. (Ober, Grimes & Stinson, Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in the Chapter X Bankruptcy Reorganization proceedings of the Petrol Terminal Corporation and its subsidiaries, including Petrol California Marketers, Inc. The reorganization proceedings are pending in the United States District Court for the District of Maryland and that court has entered an order enjoining the First National Bank in Houston, Texas, and others from prosecuting a suit in the United States District Court for the Southern District of Texas relating to collateral pledged by the debtor to secure an indebtedness due the bank. The appeal before us is taken from the refusal of the court below to dissolve this injunctive order.

The facts are that on July 3, 1951, a petition for the reorganization of the debtor corporation was approved by the court below and a trustee was appointed for the corporation's affairs pursuant to the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. It had been indebted to the First National Bank of Houston in the sum of $1,100,000, but this indebtedness had been reduced to $445,000 by payments made, $395,000 of which the trustee contends were preferential. In addition to making these payments, debtor pledged with the bank, as additional collateral for the balance due, all of the stock which it held in two of its subsidiary corporations involved in the reorganization and all of its right, title and interest under contracts with the California Oil Company entitling it to money payments from that company. The trustee conducted an investigation with respect to the payments made by the debtor corporation to the bank and the assignments made as collateral security, and on February 13, 1952 filed a report with respect thereto as follows:

"The Houston Bank loaned Marketers, (one of the subsidiaries in reorganization) between November 24, 1950, and January 12, 1951, $1,100,000.00 on collateral of alleged accounts receivable due from customers who denied liability thereon. The unpaid balance on such loan is about $440,000.00, plus interest and attorneys' fees. The Bank received payments aggregating $395,000.00 between February 27 and April 12, 1951. The Bank further took as security for its remaining claim against Marketers on April 18, 1951, an assignment of Terminal's (not Marketers) stock interest in Automotive and Lehigh. It obtained likewise, on May 29, 1951, the same day on which bankruptcy proceedings were filed against Terminal, an assignment of

commissions payable to Marketers over a period of years by Calso (known as the Merit-Meadville contracts), which it is estimated will aggregate some $250,000.00 The officers and counsel of the Bank were examined under the provisions of Section 21 sub. a of the Bankruptcy Act and the evidence strongly indicates that the Bank had sufficient knowledge of facts prior to February 27, 1951, the first date of payment above mentioned, indicating the insolvency of Terminal and Marketers, so as to make all of the payments aggregating $395,000.00 and likewise the transfers for additional security above mentioned, voidable preferences under the Bankruptcy Act."

■ On March 26, 1952 the bank instituted in the Southern District of Texas the suit against the trustee asking that the claim of the trustee with respect to the collateral pledged and the cloud cast thereby on the bank's right, title and interest therein be set aside and removed. This was the suit prosecution of which was enjoined by the court below. The contention of the bank is that the trustee can establish a preferential transfer with respect to the payments and collateral only by a plenary suit brought against the bank in the district of its residence and that, the trustee not having instituted such suit, the bank is entitled to have the court which would have had jurisdiction thereof render a declaratory judgment in its favor with respect to the property held by it as collateral. In other words, the position of the bank is that, having been charged by the reorganization trustee with having been guilty of accepting a preference with respect to the property of debtor pledged with it as collateral security, it is entitled to take the determination of that question away from the reorganization court by filing in the district of its residence a suit for a declaratory judgment as to its interest in the collateral and by making the trustee of the reorganization court, without his consent, a party to the suit so instituted. We do not think that the jurisdiction of the reorganization court over the property and indebtedness of debtor can be interfered with in this way. The question involved in the case is not whether the reorganization court in a Chapter X proceeding has summary jurisdiction of a suit to recover property claimed adversely by the holder thereof; but whether a secured creditor may, through the device of asking a declaratory judgment, take away the jurisdiction of the reorganization court over the property of the debtor pledged as security and may likewise take away from that court the jurisdiction to determine the amount of secured and unsecured debts of the creditor entitled to share in any plan of reorganization that the court may approve. We think it clear that this question should be answered in the negative.

■■ The reorganization court is given jurisdiction over the property of the debtor "wherever located". 11 U.S.C.A. § 511. And this jurisdiction extends over property of the debtor pledged as collateral security for debts as well as other property belonging to him. Continental Illinois National Bank & Trust Co. v. Chicago Rock Island & Pacific Ry. Co., 294 U.S. 648, 675, 55 S.Ct. 595, 79 L.Ed. 1110; Reconstruction Finance Corp. v. Kaplan, 1 Cir., 185 F.2d 791; In re Prudence-Bonds Corp., 2 Cir., 77 F.2d 328; Gerdes on Corporate Reorganization, sec. 855. The court is likewise given jurisdiction to allow claims of creditors and, with respect to secured claims, "to determine summarily the value of the security and classify as unsecured the amount in excess of such value". 11 U.S.C.A. §§ 596 and 597. It is given power, also, upon confirmation of a plan of reorganization to order distribution of the debtor's assets among creditors and stockholders, whether they have filed proofs of claim with the court or not. 11 U.S.C.A. § 624. And in order that it may not be hindered or interfered with in the discharge of its duties by proceedings in other courts, it is given express power to "enjoin or stay until final decree the commencement or continuation of a suit against the debtor or its trustee or any act or proceeding to enforce a lien upon the property of the debtor". 11 U.S.C.A. § 516(4). Upon approval of the petition for reorganization, therefore, the en-

forcement of the bank's rights with respect to the property of debtor held as collateral was a matter within the exclusive jurisdiction of the reorganization court, as that court had exclusive jurisdiction over the property pledged as well as over the classification of the indebtedness secured thereby. It was for that court, and not some other court, to say whether or not the pledge was valid and in what amount the debt should share in the plan of reorganization as a secured debt and in what amount as an unsecured debt. In determining these questions it necessarily had to decide whether or not the pledge was void on the ground of being preferential in contravention of the bankruptcy act.

To permit the Texas court to determine the question of preference, and consequently the validity of the pledge, would deprive the reorganization court of the right to determine what part of the debt was secured and what part unsecured. Furthermore, since the determination of the questions relating to preference would be res judicata binding upon the reorganization court, the determination by the Texas court would limit the power of the reorganization court to make proper setoffs of alleged preferential payments against any indebtedness which the bank might attempt to prove. And, most important of all, since the establishment of the validity of the pledge would fix the lien of the pledge on the property, this would take from the reorganization court power to determine the status of that property. This is of the greatest importance here, since the shares of stock pledged were shares in subsidiary corporations which were being reorganized in the proceeding presently before the court. It is clear that secured creditors may not have adjudicated by an outside court and thus remove from the control of the reorganization court matters of which the latter is expressly given exclusive jurisdiction by the statute. The purpose of Chapter X is to force secured creditors to come into the plan of reorganization worked out in the reorganization court, and this purpose would be largely thwarted if· they could have questions affecting their security

decided by other courts through the simple device of asking a declaratory judgment.

It is argued that the statute giving the reorganization court power to enjoin proceedings in other courts extends only to such suits "as will affect directly the debtors' property." The decision of the Texas court, however, "will affect directly" the debtor's property. A decision that the pledge of securities was valid and not preferential would fix on the property as a matter of law a lien for the entire debt for which the pledge was made and would disable the reorganization court from making any different adjudication with respect to the status of that property, a large part of which consisted of shares of stock in subsidiary corporations involved in the reorganization. The language of the statute, however, is not limited to the staying of suits which "will affect directly the debtor's property", and it has been expressly held that the prosecution of a suit to recover damages may be enjoined. Foust v. Munson S. S. Lines, 299 U.S. 77, 83, 57 S.Ct. 90, 81 L.Ed. 49. See also In re Pitman & Brown Co., D.C. 38 F.Supp. 587. Clearly the reorganization court can and should enjoin the prosecution of any suit which would take from it the decision of any question which it has the duty to decide in connection with the reorganization or which would hamper it in any way in exercising the power imposed upon it by Chapter X, since any effective exercise of the power of reorganization requires that proceedings relating thereto be confined to a single court. "It is contemplated that adverse action by secured, as well as unsecured, creditors may be restrained, that the debtor or its trustee may be protected against harassing or interfering actions in other courts, and that where necessary and desirable the adjudication of claims against the debtor may be confined to the reorganization court." 6 Collier on Bankruptcy 14th ed. page 735–736. "In Chapter X proceedings the district judge has discretion to stay all suits against the debtor. 11 U.S. C.A. § 516(4). We can upset the stay only if discretion was abused". Drincup Vendors v. Fountain Machine, 2 Cir., 134 F.2d

823. See also Foust v. Munson S. S. Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49; Matter of Michigan Brewing Co., D.C., 24 F. Supp. 430, affirmed Conlon v. Michigan Brewing Co., 6 Cir., 101 F.2d 1007; Mack v. Pacific S. S. Lines, Ltd., 9 Cir., 94 F.2d 95. A suit in rem is a suit against the debtor within the inhibition of 11 U.S.C.A. § 516(4). 6 Collier on Bankruptcy 14th ed. 739.

There is nothing to the contrary in the decision of this court in Warder v. Brady, 4 Cir., 115 F.2d 89, 95. That case decided merely that the reorganization court was without summary jurisdiction of a suit by the trustee to recover property adversely held where there was a dispute as to title. Nothing said in the case suggests that the court was without jurisdiction over property of the debtor pledged as collateral security or without jurisdiction to enjoin proceedings in other courts which would interfere with its control of that property or the allowance of claims based upon indebtedness secured by it. The court, speaking through Judge Soper, pointed out the difference between the power of the court in a reorganization proceeding and its power in straight bankruptcy over property which had been pledged as security. After referring to cases which had arisen in ordinary bankruptcy procedure, the court said:

"These cases related to ordinary bankruptcy procedure, and are not conclusive here. The bankruptcy court in reorganization proceedings under § 77B, 11 U.S.C.A. § 207, had, and under Ch. X of the 1938 Act now has a wider control, that comprehends not only property of the debtor in his actual or constructive possession, *but also property of the debtor in the hands of lien holders.* The formulation of a plan of reorganization contemplates a readjustment of secured as well as unsecured debts, and so the summary power of the court extends to all of the debtor's property that can be affected by a plan, *whether or not the property is in his possession.* Thus in Continental [Illinois National] Bank & Trust Co. v. [Chicago] Rock Island [& P.] Ry.

[Co.] 294 U.S. 648, 55 S.Ct. 595, 79 L. Ed. 1110, in a proceeding for the reorganization of a railroad under § 77, 11 U.S.C.A. § 205, the court granted an injunction in a summary proceeding against certain banks which held the bonds of the railroad as collateral * * * during the pendency of the procedure. The propriety of a summary rather than a plenary proceeding was sustained because an adverse claim to the property was not involved." (Italics supplied.)

In Cuyahoga Finance Co., 6 Cir., 136 F. 2d 18, 20, which is directly in point here, the court held that its power was not limited to enjoining a pledgee creditor from selling pledged assets in his possession, but that it had power to determine his claim and allow setoffs against it, although he had not filed it in the proceeding. The court said:

"The vital question on this appeal is whether the jurisdiction of the court ceases after restraining a pledgee creditor from disposing of the pledged assets in his possession without the consent of the court or whether such jurisdiction extends to determine set-offs of the debtor without the consent of the creditor. It is settled law that upon the filing of a petition under chapter 10 of the Bankruptcy Act, all property in which the debtor has, or may claim, an interest passes under the control of the Bankruptcy Court, and upon approval of the petition, title vests in the trustee or the debtor in possession as of the date of the filing of the petition. 11 U.S.C.A. § 557, 52 Stat. 888; Gross v. Irving Trust Company, 289 U.S. 342, 344, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; Isaacs v. Hobbs Tie & Timber Company, 282 U.S. 734, 737, 51 S.Ct. 270, 75 L.Ed. 645. The jurisdiction of the court is not limited to the administration of the property which admittedly belongs to the debtor, but also extends to the determination of the question of title. Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020. To this end the Bankruptcy Court may enjoin credi-

tors collaterally secured from selling or disposing of such collateral without the consent of the court and may make all orders necessary to prevent hindrance or delay in the preparation and consummation of the plan of reorganization. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Railway [Co.,] 294 U.S. 648, 676, 55 S.Ct. 595, 79 L.Ed. 1110.

\* \* \* \* \* \*

"The Act places under the jurisdiction of the court all the tangible and intangible assets of the corporation whether or not in its possession so that in a single action, it may adjust conflicting claims. A distinct purpose of the amendment to the Bankruptcy Act was to subject the administration of the corporation, during the period of reorganization or rehabilitation, to the control of tribunals clothed with authority and charged with the duty to proceed to consummation of a plan or reorganization in a summary way.

"In order that the corporation may be quickly rehabilitated, time being in many instances the essence of the proceedings, the court has broad powers to bring into the action all of these who may have claims on the corporate assets. In re Burton Coal Company, 7 Cir., 126 F.2d 447."

Duda v. Sterling Mfg. Co., 8 Cir., 178 F.2d 428, 433, 14 A.L.R.2d 899, relied on by appellant, involved a suit by reorganization trustees in the reorganization court on a claim against a third person. In holding that the summary jurisdiction of the reorganization court did not extend to such a claim, the Court of Appeals of the 8th Circuit expressly distinguished it from the case involved in Cuyahoga Finance Co., supra (which we think is controlling here) in the following language:

"In re Cuyahoga Finance Co., 6 Cir., 136 F.2d 18, does hold that in Chapter X proceedings the bankruptcy court has jurisdiction to determine, in summary proceedings, setoffs against the debtor's obligations to a pledgee creditor which, having possession of the pledged assets, declines to file a claim or otherwise consent to the jurisdiction of the court. The action, however, was one in equity brought by the trustees for the preservation of property belonging to the bankrupt estate pledged to secure a debt of the bankrupt against which the bankrupt claimed setoffs. The jurisdiction of the bankruptcy court in Chapter X proceedings to protect and preserve the property of the bankrupt estate was not in question and could not be questioned. The determination of the net amount of the bankrupt's debt to the pledgee chargeable to the pledged collateral was a necessary incident in an action for the preservation of the bankrupt estate over which the court had jurisdiction. Having jurisdiction as a court of equity of a proceeding for the protection of the property of the bankrupt estate, without which it was impossible for reorganization to proceed, the court necessarily had the power and the duty to determine all other issues incident to the main action and necessary to its final determination. See the discussion of this case in In re International Power Securities Corp., supra, 3 Cir., 170 F.2d [399] at page 403. Unlike the causes of action involved in the present proceeding, the Cuyahoga case was not an action at law to enforce an alleged debt owing the bankrupt which the debtor denied or an action at law to recover property held adversely to the bankrupt under a claim of ownership."

The comprehensive power given the reorganization court over property of the debtor which had been pledged or mortgaged was thus stated by Judge Magruder speaking for the Court of Appeals of the First Circuit in Reconstruction Finance Corporation v. Kaplan, supra, [185 F.2d 795], viz:

"Section 77(a), like § 111 of Chapter X, vests in the reorganization court 'exclusive jurisdiction of the debtor and its property wherever located'. Under this broad language, the Supreme Court declined to recognize any distinction between the power of the

court to control pledged collateral of the debtor and property subject to mortgage. 'So far as constitutional power is concerned, there is no difference between an injunction restraining the enforcement of a real estate mortgage and one restraining the enforcement of a pledge by the sale of collateral security. Such differences as exist affect not the power but the propriety of its exercise—that is to say, the discretion of the court.' [Continental Illinois National Bank & Trust Co., v. Rock Island & P. Co.] 294 U. S. at page 677, 55 S.Ct. at page 606. It is true that in the Rock Island case, the Court merely issued an injunction and did not direct that the pledged collateral be turned over to the reorganization trustee. *But this, we think, was not from lack of power in the Court to supplant the possession of a secured creditor, if, in its sound discretion, it deemed that possession by the trustee would best serve the purposes of the reorganization proceeding.* The power to displace a mortgagee in possession is undoubted. This result was reached in Grand Boulevard Inv. Co. v. Strauss, 8 Cir., 1935, 78 F.2d 180, under the broad grant of jurisdiction in § 77B, without the aid of any specific provision such as is now found in the second sentence of § 257 of Chapter X." (Italics supplied.)

■ See also In re Franklin Garden Apartments, 2 Cir., 124 F.2d 451, 454; John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 134 F.2d 162, 163, for the power of the reorganization court over mortgaged property. It is true that the case of mortgaged property is expressly covered by § 257 of the act, 11 U.S.C.A. § 657, which was necessary because, under the laws, of a number of states, title to mortgaged property is vested in the mortgagee. The inclusion of such a provision makes clear, however, the intention of Congress that the reorganization court shall exercise summary jurisdiction over all property in which the debtor has an interest including that which has been transferred as security for indebtedness.

■ The principles here applicable are well stated in Collier on Bankruptcy 14th ed. vol. 6 pp. 578–585, as follows:

"In corporate reorganization, as in ordinary bankruptcy, the court clearly has summary jurisdiction over all matters of administration beginning with the filing of the petition and ending with the entry of the final decree—matters such as the proof and allowance or disallowance of claims, classification of creditors and stockholders, approval of compromises, appointment of receivers and trustees, approval and confirmation of the plan, examination and investigation of the debtor, determination of fees and allowances, and the like. This jurisdiction is exclusive and may not be surrendered or delegated to other courts, subject to the proposition that the reorganization court may, in the exercise of a sound discretion and at times must, permit the liquidation of claims in a nonbankruptcy forum.

"But this is only part of the picture. Inevitably disputes or controversies will arise in the course of the proceedings between the trustee or debtor in possession and others concerning property claimed to be a part of the estate. In ordinary bankruptcy, generally speaking, where the controversy is one concerning property in the actual or constructive possession of the bankruptcy court, that court may adjudicate summarily all rights and claims pertaining thereto. The reorganization court may do likewise. This jurisdiction exists under § 2, sub. a(7) of the Act as well as § 111, together with the inherent right in all courts to protect their possession, and as previously stated is not affected by the provisions of § 23. As to property within its actual or constructive possession, the reorganization court may try questions of title, determine the amount and validity of liens, issue turnover orders, adjudicate petitions of reclamation, and enjoin proceedings that interfere with the administration of the estate or which are directed towards the debtor's property.

532

Once the court acquires possession, the jurisdiction to determine all conflicting claims will remain, and there can be no interference with such possession upon the part of any other court, except by way of review or appeal, or by permission of the bankruptcy court that the claim be determined in a nonbankruptcy forum.

"In ordinary bankruptcy, however, the exercise of the powers just enumerated is circumscribed by the actual or constructive possession of the debtor's property. Where the controversy is one involving property in the actual or constructive possession of a third person asserting a bona fide adverse claim, whether of title or of lien, the bankruptcy court has no jurisdiction to determine summarily that person's claim, unless that person consents thereto. Absent consent, the holder of the property is entitled to have the controversy litigated by a plenary suit in the proper forum. Here we are faced with the question: does this restriction govern in corporate reorganization? The authoritative answer seems to be that it does, with, however, some modifications. These modifications are better understood if we consider for a moment the nature of corporate reorganization.

"In a reorganization proceeding the claims of secured as well as unsecured claims are dealt with. The plan may modify or alter the legal rights of all or any class of creditors, secured or unsecured. Creditors such as mortgagees, indenture trustees or other necessary parties may be compelled to execute and deliver any instruments necessary to convey away their interest in the property. The property so transferred will be free and clear of all claims and liens, except as expressly provided for in the plan. And upon consummation of the plan, the debtor may be discharged from all its debts and liabilities. It is, therefore, generally vital to the success of a reorganization that all the debtor's property be included, that the continuation of the debtor's business be not unduly hampered by dissipation of the property to particular creditors, or by the separate administration of the estate in numerous forums."

It will be noted that only where property is adversely claimed by a third person does Collier conclude that a plenary suit, as in ordinary bankruptcy, is necessary to reach it and this is true only with some modifications which are explained in the last paragraph above quoted. The cases cited by Collier as showing the extent to which the ordinary bankruptcy rule is followed are not cases where property of the debtor has been pledged and is held by the pledgee merely as security for a debt, but cases in which the trustee has attempted to recover in a summary proceeding in the reorganization court on a debt owing by a third person, or to recover in such a proceeding property held by a third person under claim of absolute ownership. Thus, the question involved in Matter of Standard Gas & Electric Co., 3 Cir., 119 F.2d 658, was whether there was summary jurisdiction in the reorganization court to entertain an action on a debt owing a third person to debtor in reorganization. In holding that there was not, the court carefully distinguished the case from those holding that there was summary jurisdiction over property of the debtor held by a mortgagee or pledgee. In the case of In re Mt. Forest Fur Farms of America, 6 Cir., 122 F.2d 232, the question related not to the power of the court over property of debtor pledged as collateral, but over mineral rights held by a third person under a claim of ownership. Thompson v. Terminal Shares, 8 Cir., 104 F.2d 1, held merely that a reorganization court did not have summary jurisdiction in a suit to recover a debt and have it declared an equitable lien on property which was claimed to have been fraudulently sold. All of these cases recognized the distinction between a suit relating to property of the debtor and a suit seeking to recover a debt or to recover property adversely claimed by a third person.

Appellant fails to distinguish between the power of the reorganization

court over property of the debtor which has been pledged as collateral security and which is held by the creditor merely as security for a debt and its power over property which is claimed adversely to the debtor by one who is in possession asserting absolute ownership. It is clear that the reorganization court may not exercise summary jurisdiction in the latter case but may exercise it in the former, and in the former case may protect its jurisdiction by proper use of its injunctive power. That was what was done by the court below in this case.

Grave questions arise as to whether the trustee could be sued in the Texas suit without statutory authority and without the consent of the court that appointed him, and also whether the shares of stock and contracts had such situs in Texas as to authorize an action in rem in that state with regard thereto. We need not decide these questions, however, since we think there can be no doubt of the power of the court below to enjoin the prosecution of the Texas suit even if it was properly instituted.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.

SOPER, Circuit Judge (dissenting).

This appeal is taken from an order of the District Court of Maryland whereby the First National Bank of Houston, Texas, its officers and attorneys, were enjoined from proceeding in an action brought by the Bank in the District Court for the Southern District of Texas against Charles M. Lake, who is the trustee appointed by the District Court of Maryland in a proceeding under Ch. X of the Bankruptcy Act for the reorganization of Petrol Terminal Corporation and several of its subsidiaries, including Petrol California Marketers, Inc. For some time past the Bank had been a creditor of the debtor corporation in a large sum upon which payments and transfers of securities and contracts as collateral have been made, which the trustee claims were preferential since they were accepted by the Bank within four months prior to the bankruptcy proceeding with reason to

believe that the debtor was insolvent. The purpose of the suit brought by the Bank in Texas is to remove the cloud thus cast upon its right to retain the moneys paid on account of the debt and the property pledged as collateral. But the Bank does not ask for the foreclosure of its lien on the collateral. The question involved in the present appeal is whether the District Court of Maryland had jurisdiction to enjoin the prosecution of the Texas suit as an unwarranted interference with the reorganization of the debtor corporations. The court answers this question in the affirmative on the ground that in a proceeding under Ch. X, only the reorganization court has the power to determine the title of a creditor to collateral held as security for a debt of the bankrupt; and hence the decision necessarily involves the important inquiry as to the extent of the jurisdiction of the reorganization court to determine summarily adverse claims against the property of the bankrupt.

On May 29, 1951 an involuntary petition in bankruptcy was filed in the District Court of Maryland against Terminal and a receiver was appointed. On June 30, 1951 a petition for reorganization of the debtor under Ch. X of the Bankruptcy Act was filed and approved. Subsequently similar petitions for the reorganization of the subsidiary corporations were filed and approved; and on July 3, 1951 Charles M. Lake was appointed and qualified as trustee.

Prior to these proceedings Terminal, through its subsidiary Marketers, became indebted to the Bank for loans in the aggregate sum of $1,100,000. This sum was reduced to approximately $839,000 by payments on or about February 8, 1941; and later the debt was further reduced by payments amounting to $395,000 between February 26, 1951 and April 12, 1951 which the trustee claims were made with knowledge by the Bank of the debtor's insolvency.

On April 17, 1951 Terminal and Marketers, to secure the balance of $445,000 owing the Bank, pledged shares of common stock in various corporations worth between $100,000 and $200,000. On May 29, 1951 Marketers assigned to the Bank

as additional collateral certain contracts which entitled Marketers to receive between $200,000 and $250,000 over a period of years. The Bank held physical possession of this collateral at the time of the filing and approval of the reorganization petitions.

The Bank did not file a claim in the reorganization proceeding, although it was notified thereof and the time for filing has apparently passed. The trustee, however, instituted ancillary proceedings in the District Court for the Southern District of Texas under Section 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44, sub a, and examined officers of the Bank and other witnesses in regard to the aforementioned transactions with Terminal. On February 13, 1952 the trustee reported to the reorganization court that evidence developed in the Texas proceedings indicated that the payments aggregating $395,000 and the transfers of the stocks and contracts to the Bank, made within four months prior to the reorganization proceedings, constituted voidable preferences recoverable by the trustee.

On March 26, 1952 the Bank filed the Texas suit against the trustee under 28 U.S.C.A. § 1655, which authorizes service upon a non-resident defendant in an action in a District Court to enforce a lien upon or remove a cloud upon the title to property within the District; and in case the defendant does not appear, restricts the adjudication to the property subject to the action. Without appearing in the Texas court, the trustee brought the instant suit and the District Court below issued the injunction which was served upon the Bank and its agents in Texas. They appeared specially in answer to the action and moved the court to dissolve the injunction on the ground that the court was without jurisdiction; but the court overruled the motion. In the order overruling the motion, from which this appeal is taken, the court stated that the trustee had not made any claim for relief other than the claim for the injunction.

It will have been observed that in both the Texas and Maryland proceedings, the moving party definitely restricts the relief which it seeks. In Texas the Bank goes to the merits of the controversy by asking a decision upon the validity of the pledge of collateral and its right to retain the moneys paid upon the debt; but it does not seek to foreclose its lien by disposing of the collateral. The Bank has carefully refrained from filing its claim in the reorganization proceeding and thus submitting to the jurisdiction of the Maryland court. As an adverse holder of property of the bankrupt it stands upon its right to be sued in a plenary action in Texas; but at the same time it recognizes that the rights of secured as well as unsecured creditors are subject to adjustment under the reorganization statute, and it therefore declares its purpose to hold the property in its hands subject to the plan of reorganization to be formed in the Maryland proceeding. The effect upon the reorganization proceeding of a decision in the Texas case would thus be limited to a determination of the rights of the parties in the funds and the collateral; and it would seem that a decision on this point must necessarily be made either in Texas or in Maryland before the reorganization can be consummated.

The trustee on his part would prefer that the controversy be determined in the District Court of Maryland, but he recognizes that the Bank is an adverse holder in possession of property claimed by the bankrupt, and he concedes that if he decides to sue the Bank to recover the alleged preferential payments, he must bring a plenary suit against the Bank in Texas. He claims that the reorganization court has broad powers and exclusive jurisdiction over all property of the bankrupt wherever situated, including in this case the collateral in the possession of the Bank; and he contends that he and not the Bank should be allowed to decide at what stage in the proceedings claims against the debtor's property should be litigated, but does not contend that the reorganization court has jurisdiction in a summary proceeding to determine the Bank's rights in the collateral without its consent, and he has eliminated from the instant case any claim for relief in this respect.

Substantial support may be found for the cautious attitude of the parties in Ch. X of the Bankruptcy statute and in the decisions of the courts in this field of the law. Reorganization under Ch. X does not contemplate liquidation of the assets of the bankrupt's estate but an adjustment or reduction of the rights of creditors, secured and unsecured, under a plan which will enable the bankrupt to continue its business activities; and the bankruptcy court is given important powers to this end. Thus in Warder v. Brady, 4 Cir., 115 F.2d 89, 95, we said:

"These cases related to ordinary bankruptcy procedure, and are not conclusive here. The bankruptcy court in reorganization proceedings under § 77B, 11 U.S.C.A. § 207, had, and under Ch. X of the 1938 Act now has a wider control, that comprehends not only property of the debtor in his actual or constructive possession, but also property of the debtor in the hands of lien holders. The formulation of a plan of reorganization contemplates a readjustment of secured as well as unsecured debts, and so the summary power of the court extends to all of the debtor's property that can be affected by a plan, whether or not the property is in his possession."

The power of the courts in reorganization proceedings is derived from and implemented by a number of statutory provisions. Thus § 102 of the Act, 11 U.S.C.A. § 502, eliminates the limitation upon the jurisdiction of the court in ordinary bankruptcy proceedings imposed by § 23, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 46, sub. b, which restricts suits by the trustee to suits which might have been brought by the bankrupt if bankruptcy had not been instituted; Section 2(15) gives bankruptcy courts the power to make such orders as may be necessary for the enforcement of the provisions of the Act; Section 111 gives the reorganization court exclusive jurisdiction of the debtor, and its property wherever located; Section 115 gives the court upon the approval of the petition for reorganization the powers which a court of the United States would

have if it had appointed a receiver in equity on the ground of insolvency. Sections 256 and 257 authorize the filing of a petition for reorganization notwithstanding a prior mortgage foreclosure or equity proceeding in a court of the United States and the appointment of a receiver therein, and vest the trustee with the rights of the prior receiver in the property of the bankrupt. Section 148 provides that until otherwise ordered by the judge an order approving a petition for reorganization shall operate as a stay of any action or other proceeding to enforce a lien against the debtor's property; Section 116(4) empowers the judge to enjoin or stay until final decree the commencement or continuation of a suit against the debtor or its trustee, or any act or proceeding to enforce a lien on the property of the debtor. In addition Sections 196 and 197 empower the court to fix a time within which proofs of claims of creditors may be filed and to determine summarily the objections of any party in interest to the allowance of claims; also empower the court to divide creditors into classes according to the nature of their claims; and to determine summarily the value of the security and classify as unsecured the amount in excess of such value. Sections 216 to 228, relating to the plan of reorganization, give the court broad powers to deal with the rights of creditors and to alter and modify the rights of secured or unsecured creditors and to deal with all or any part of the property of the debtor. Section 216(10) provides for the modification or cancellation of liens and the sale of property free from liens. Section 224 (1) makes the plan upon confirmation binding upon all creditors whether or not they have accepted it or have filed proofs of their claims and whether or not these claims have been scheduled or allowed. Sections 226 and 228 provide that the property dealt with by the plan, when transferred in accordance therewith, shall be free and clear of all claims of creditors and that the final decree shall discharge the debtor from all debts and liabilities except as provided in the plan.

In reliance upon these provisions, it has been held that the reorganization court

may enjoin the foreclosure of a lien upon the property of the bankrupt in the possession of a creditor or third party. Continental Ill. Nat'l Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; In re Prudence Bonds Corp., 2 Cir., 77 F.2d 328; In re International Power Securities Corp., 3 Cir., 170 F.2d 399.

The reorganization court also has power, in a summary proceeding, to determine the validity of an adverse claim to property of the bankrupt, such as a creditor's lien for debt, provided the property is in the actual or constructive possession of the court. In Thompson, Trustee, v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876, the court said:

> "Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy. Here, the trustee succeeded to the physical possession, custody and control of the right of way lands which the railroad had enjoyed at the time of bankruptcy."

But even in this situation, the court held that since a question of state law concerning the title to rights in certain lands was involved, the case should be submitted to the state courts by the trustee, the status quo of the property being maintained in the meantime.

It is, however, well established that the bankruptcy court does not have summary jurisdiction to determine the merits of an adverse claim to property of the debtor in the claimant's possession without the claimant's consent. This has long been the rule in ordinary bankruptcy. See Cline v. Kaplan, 323 U.S. 97, 99, 65 S.Ct. 155, 156, 89 L.Ed. 97, where the court said:

> "Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court can-

not retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court. MacDonald v. Plymouth County Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093."

This rule has been applied not only in ordinary bankruptcy but also in reorganization proceedings under Section 77 or 77B. See Thompson v. Terminal Shares, Inc., 8 Cir., 104 F.2d 1, 9; (Railroad Reorganization under § 77); In re Standard Gas & Electric Co., 3 Cir., 119 F.2d 658, 661; (§ 77B); In re Mt. Forest Fur Farms of America, Inc., 6 Cir., 122 F.2d 232; (§ 77B).

In Thompson v. Terminal Shares, Inc., supra, the court said, 104 F.2d at page 9:

> "To sustain the lower court's jurisdiction of this suit would do violence to the general policy of Congress that persons shall not be subjected to civil suits except in the districts of which they are inhabitants. (Citations omitted.) The language used by Congress in Section 77, in conferring jurisdiction upon the courts of bankruptcy, does not, in our opinion, indicate any intention to abandon that policy with respect to such suits as this. (Citations omitted.) We think that the jurisdiction conferred by Section 77 upon the courts of bankruptcy is not to be regarded as general, plenary, nationwide jurisdiction at law and in equity over all questions incident to the collection of the claims of the debtor against third persons, but is to be considered as the traditional jurisdiction of such courts over the property of a bankrupt, wherever located, freed, however, from those limitations which made ancillary proceedings in other districts necessary, and with the powers which Federal equity courts exercise in receivership proceedings, so far as those powers may be necessary or appropriate in order to preserve and safeguard the property in the actual or constructive possession of debtors and in order to carry on their business pending reorganization."

Although this course has been consistently pursued by the courts, Congress took no action to abolish it in the careful revision which now constitutes Chapter X of the statute, and accordingly, the same rule has been given effect. Warder v. Brady, 4 Cir., 115 F.2d 89, 94; Duda v. Sterling Mfg. Co., 8 Cir., 178 F.2d 428, 433, 14 A.L.R.2d 899. See Finletter, The Law of Bankruptcy Reorganization, 1939, p. 178.

" * * * It is stretching the restatement of existing law by the Supreme Court too far to say that it authorizes extraterritorial service in all matters with which the reorganization court has to deal. The complete power of the court to issue nationwide service for all purposes would mean that persons who held property under a bona fide claim of right would be obliged to defend that right in a court far distant from the location of the property and the witnesses. * * * this would mean that every suit to which a trustee appointed under that chapter is a party could have its venue in the reorganization court, even though the defendant be a resident of and the property which is the subject of the litigation be situated in a far distant state. * * * "

This review of the powers conferred upon the court of bankruptcy evinces the clear intent of Congress to endow the District Courts with sufficient power to afford business organizations in distress a constructive opportunity to reorganize and survive. To this end the court may take into account and bring into the plan not only property in the bankrupt's hands but also property of the bankrupt in the possession of a creditor as security for the debt. On the other hand, an adverse holder may not be forced against his will to submit the validity of his claim to the determination of the reorganization court in a summary proceeding.

These seemingly opposing rules give rise to the present conflict, and the problem is to sustain the authority of the court without violating the rights of the bank. I do not think that the authority of the court to enjoin the trial of the Texas case can

be sustained under the automatic stay of proceedings to enforce a lien on the debtor's property which comes into play under § 148 upon the approval of the petition for reorganization; nor can it be sustained under the express power given to the judge to stay such a foreclosure by § 116(4), unless the purpose and effect of the Texas case is to give the bank the right to dispose of the collateral. That suit in its present form specifically asks only for the removal of the cloud upon the bank's title to the collateral, and the Bank disclaims any further purpose.

The removal of a cloud upon the title of an adverse claimant to property of the bankrupt does not of itself amount to the enforcement of a lien thereon or necessarily interfere with a plan of reorganization. See the following comment on such a suit against a railroad company in the course of reorganization under § 77 in Gutensohn v. Kansas City Southern Ry. Co., 8 Cir., 140 F.2d 950, at pages 952, 953, where the court said:

"The trustee's motion to dismiss for want of jurisdiction presents the theory that since the Missouri Pacific is in bankruptcy only the court having jurisdiction of the bankruptcy proceeding, the district court for the Eastern District of Missouri, has jurisdiction of any such case as this brought against the trustee. The statute, 11 U.S.C.A. § 205, sub. a, provides that during the pendency of a reorganization proceeding in bankruptcy the district court in which the proceeding is pending shall 'have exclusive jurisdiction of the debtor and its property wherever located.' The contention that a *declaratory judgment against the trustee* would constitute interference with the court's 'jurisdiction of the debtor and its property' cannot be successfully maintained. * * *

"In no event, it seems to us, could a mere declaratory judgment against the trustee—and no more than that was or could be sought by plaintiffs under the Missouri Declaratory Judgment Act—involve any direct or immediate interference with 'the debtor and its prop-

erty.' Such a judgment only could 'declare rights, status, and other legal relations.' * * * 'A declaratory judgment or decree is one which simply declares the rights of the parties or expresses the opinion of the court on a question of law, without ordering anything to be done; its distinctive characteristic being that the declaration stands by itself, and no executory process follows as of course; and the action therefor is distinguished from other actions in that it does not seek execution or performance from the defendant or opposing parties.' 1 C.J.S., Actions, § 18, p. 1018."

See also 4145 Broadway Hotel Co., 7 Cir., 124 F.2d 891. In re Adolf Gobel, Inc., 2 Cir., 80 F.2d 849; Texas Co. v. Hauptman, 9 Cir., 91 F.2d 449; Lockhart v. Mercer Tube & Mfg. Co., D.C.Del., 53 F.Supp. 301; Coastal Club v. Shell Oil Co., D.C.La., 45 F.Supp. 859.

This line of authority has led the court in the pending appeal to conclude that a reorganization court may not exercise summary jurisdiction over the property of the debtor in the possession of one who claims absolute title; and the court might have added, as the trustee concedes in his brief on this appeal, that a reorganization court also lacks summary jurisdiction over a suit by the trustee to recover a preferential payment to a creditor or to recover upon a claim due the bankrupt estate. We had previously come to these conclusions in Warder v. Brady, 4 Cir., 115 F.2d 89, and Collier on Bankruptcy, Vol. 6, 584, is to the same effect. Hence it is obvious that Congress in its latest effort to establish a practicable and efficient scheme of reorganization still withholds from the reorganization court complete power over the property of the bankrupt and still protects adverse claimants to property of the debtor in their possession from suits in a distant state. Accordingly it is frequently necessary for the trustee to engage in litigation outside the reorganization court before a plan of reorganization can be effectuated; and that will be necessary in the present proceeding unless the trustee abandons his claims for the return of the preferential payments alleged to have been made to the Bank.

The area of disagreement is therefore restricted to the limited position that controversies over property of the bankrupt held by a creditor as collateral security for a debt of the bankrupt must be adjudicated in the bankruptcy court. This position cannot be defended on the ground that there is a substantial distinction in principle between a claim of a partial interest in property of the bankrupt and a claim of absolute title thereto. In each case the claim is adverse and the propriety of a suit against the claimant in the district of his residence is based on the same considerations.

But it is said that the bankruptcy court has exclusive jurisdiction over controversies with respect to the claims of creditors because of certain sections of the bankruptcy statute. These provide that the judge shall fix the time within which proofs of claims may be filed, and empower the court to determine summarily objections to the allowance of any claim; and to classify claims according to their nature, and if necessary, to determine summarily the value of the securities held by secured creditors; and upon confirmation of a plan of reorganization, to direct the distribution of the assets to the creditors whose claims have been allowed, or listed by the trustee or scheduled by the debtor and not disputed. See 11 U.S.C.A. §§ 596, 597, 624.

These sections, however, do not bear upon the question involved. The bankruptcy court has always had power under earlier statutes to receive and pass on claims of creditors; and that power has never been construed to endow the court with authority to compel any creditor to file his claim, or to compel a secured creditor to submit his title to collateral security to the adjudication of the bankruptcy court. The creditor by failing to file his claim may lose his right to share in the distribution of the assets in possession of the trustee, but not his right to the collateral in his possession, or to the decision of the appropriate court if his right to the collateral is disputed

It is true that in certain reorganization proceedings the courts have had occasion to entertain an application of the trustee for an order directing a creditor to turn over property of the bankrupt in his possession without impairing the creditor's substantive rights. In In re Cuyahoga Finance Co., 6 Cir., 136 F.2d 18, the trustee filed an application to the court for authority to redeem collateral in the hands of a creditor and in connection therewith asked the court to determine the amount of certain set-offs to the creditor's claim; and the court in the face of objection to its jurisdiction went so far as to hold that it had the power summarily to determine the amount of the set-offs.

The decision is pertinent since it bears upon the extent of the summary jurisdiction of the reorganization court, but it relates to a situation which is not before us in the pending case. Here the trustee has made no effort to secure possession of the collateral in the hands of the Bank and manifests no intention to do so in the future. His sole purpose is to compel the Bank to litigate its claims in the bankruptcy court. Even if it should become desirable for the trustee to obtain possession of the collateral so as to make use of it in the formation of a plan of reorganization, this could easily be done in such a way as to safeguard the Bank's interest in the collateral without disturbing the jurisdiction of the Texas court to determine the respective rights of the parties therein. The determination of these rights could be made in either court without interfering with the plan of reorganization.

Moreover, it is significant that the court in the Cuyahoga case assumes a position more extreme than any one has ventured to take in the present litigation. That decision contains the statement, 136 F.2d 20, that the jurisdiction of the reorganization court "is not limited to the administration of the property which * * * belongs to the debtor, but also extends to the determination of the question of title. Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020." If this quotation contains a correct statement of the law, nothing is left of the rule that the title of an adverse claimant of the property of the debtor in his possession cannot be adjudicated summarily in a court of bankruptcy; but the statement is not sustained either by the decisions of the Supreme Court or of this court. In Ex parte Baldwin, supra, the property was not in the possession of the claimant but in the possession of the trustee; and in the pending case this court on appeal expressly holds that the reorganization court may not exercise summary jurisdiction over property of the bankrupt in the position of an adverse claimant asserting absolute ownership. It should be added that the decision in Reconstruction Finance Corp. v. Kaplan, 1 Cir., 185 F.2d 791, does not support the extreme statement of the rule because in that case the adverse claimant submitted to the adjudication of his rights by the bankruptcy court.

In the present case, the Bank should not be enjoined from the trial of the suit in the Texas Court but might properly be enjoined from the enforcement of the lien upon the collateral in its hands.