225 F.2d 489
 In the Matter of MUNTZ TV, Inc., Principal Debtor.
Tele-Vogue, Inc., and Muntz Industries, Inc., Debtors.
W. G. EMBRY and Fort Worth National Bank, Appellants,
v.
C. Wylie ALLEN and Floyd G. Dana, Trustees of Muntz TV, Inc., Appellees.
 No. 11355.
 United States Court of Appeals Seventh Circuit.
 August 17, 1955.
 Rehearing Denied September 30, 1955.
 
 Rufus S. Garrett, Fort Worth, Tex., Robert F. Fuchs, Chicago, Ill., Rufus S. Garrett, Jr., Fort Worth, Tex., Frederick Mayer, Chicago, Ill., Garrett & Garrett, Fort Worth, Tex., Johnston, Thompson, Raymond & Mayer, Chicago, Ill., of counsel, for appellants.
 Joseph W. Grady, James Overton Brooks, Chicago, Ill., for appellees.
 Before MAJOR, FINNEGAN and SWAIN, Circuit Judges.
 FINNEGAN, Circuit Judge.
 
 
 1
 Muntz TV, Inc., principal debtor here, leased a store building in Fort Worth, Texas on June 4, 1952 for a three-year term expiring June 30, 1955 from W. G. Embry of that State. By proceedings commenced March 2, 1954, with filing an involuntary petition for reorganization under Chapter X of the Bankruptcy Act,[1] appellees Allen and Dana, were appointed trustees of the debtor corporation. The Texas lease was rejected, as of March 4, 1954, by an order entered below April 2, 1954. Forced to enter an over-all field warehousing program with Lawrence Warehouse Company, shortly after signing that lease, Muntz sought its landlord's consent. But Embry, fearful of waiving his landlord's lien, withheld approval of such arrangement under which a part of all Muntz's leased premises would be segregated and Lawrence given custody of certain merchandise placed in segregated areas. Yet, Embry suggested that six months rent in advance under a deferred receipt arrangement with Muntz could stimulate granting the essential consent. Consequently a document was executed June 13, 1953 by Embry and Muntz containing these aspects now relevant:
 
 
 2
 "Whereas, Muntz Television Company, Inc. desires to enter into a field warehouse agreement with Lawrence Warehouse Company which involves a section of approximately 45 ft. by 46 ft. of the building covered by aforesaid lease, and has requested that the above named Lessor, W. G. Embry, grant permission to said Lessee to enter into such agreement for field warehouse purposes:
 
 
 3
 "Now, Therefore, In Consideration of Muntz Television Company, Inc. placing the sum of $2,400.00 in cash in escrow with the Fort Worth National Bank of Fort Worth, Texas, to cover the rentals of $400.00 per month which will become due and payable under the terms of said lease for the months of January, February, March, April, May and June, 1955 (same being the last six (6) months of said lease), the said Lessor, W. G. Embry, hereby gives his consent for said Lessee, Muntz Television Company, Inc., to enter into such field warehouse agreement with Lawrence Warehouse Company, as aforesaid, but such consent shall be without waiver or abatement of any terms or conditions set forth in said lease and is given with the specific understanding that all the terms and conditions of said lease shall remain in full force and effect.
 
 
 4
 "The parties agree that the Fort Worth National Bank shall hold said sum of $2,400.00 so placed in escrow until January 1, 1955, when said sum shall be paid over to W. G. Embry in payment of the rentals due and owing under said lease for the last six months thereof, as above set out, unless prior to January 1, 1955, the Muntz Television Company, Inc. shall breach said lease agreement — in which event, the said Bank shall have the right and authority to promptly pay over to the said W. G. Embry the said sum of $2,400.00. Upon the payment of said sum of $2,400.00 to the said W. G. Embry, as herein provided, the said W. G. Embry agrees to credit said Muntz Television Company, Inc. for the last six (6) months of said rentals to which he is entitled under said lease." (Italics added).
 
 
 5
 Co-appellant, Fort Worth National Bank, Fort Worth, Texas, enters this situation because, as the parties' stipulation established, $2,400 was deposited with that Bank on June 13, 1953 by Muntz under that agreement already quoted. Filing their petition below, August 18, 1954, these trustees sought to have the Bank turn over $2,013.43 on the theory such moneys remained their debtor's property, since this was a security deposit flowing to trustees by virtue of an omnibus order entered March 3, 1954. That amount, incidently, reflects adjustment for charges incurred by these trustees for use of the premises involved. In passing, we also note, that rejection of the Embry-Muntz agreement was asked for by trustees. Embry resisted the petition for turnover, at the threshold, by challenging jurisdiction of the district court. He contended the fund was deposited in escrow with the Bank who, in turn held the $2,400 in trust for him. Insisting that this money did not belong to Muntz, Embry demanded that sum from the bank.
 
 
 6
 Appellants would have us reverse and remand (with directions) the district judge's order confirming his special master's report and directing the bank to pay $2,013.43 over to these trustees.
 
 
 7
 Since this is not a straight bankruptcy proceeding, but one under Chapter X we must decide, at the outset, the applicability and extent of principles governing summary and plenary jurisdiction. See e. g. Duda v. Sterling Mfg. Co., 8 Cir., 1950, 178 F.2d 428, 433, 14 A.L.R. 2d 899. Then, if appropriate we can apply them to the specific facts involved and determine if Embry and the Bank must be accorded a plenary proceeding. Implicit in this later aspect, of course is another question: Is the adverse claim colorable, substantial and ingenuous? We think First National Bank of Houston v. Lake, 4 Cir., 1952, 199 F.2d 524 contains an adequate explanation of cases cited by both parties to this appeal, while at the same time reflecting the answer to whether Chapter X completely overrides differences in summary and plenary jurisdiction. Chief Judge Parker could have been summarizing our problem here when he wrote. Id., 199 F. 2d 532, 533:
 
 
 8
 "Appellant fails to distinguish between the power of the reorganization court over property of the debtor which has been pledged as collateral security and which is held by the creditor merely as security for a debt and its power over property which is claimed adversely to the debtor by one who is in possession asserting absolute ownership. It is clear that the reorganization court may not exercise summary jurisdiction in the latter case but may exercise it in the former * * *." (Italics ours).
 
 
 9
 In their joint responsive pleading to appellees' petition for turnover we find appellants' paragraph five (5) stated:
 
 
 10
 "That the Forth Worth National Bank verily believes that said fund is the property of W. G. Embry and that said W. G. Embry is entitled to immediate possession thereof, but said bank stands willing and ready to pay the same to whomsoever it is due; and suggests that a plenary action be brought * * * to legally determine the right and title to said fund."
 
 
 11
 The special Master's conclusion of law numbered eight disposes of that problem in this fashion:
 
 
 12
 "W. G. Embry's claim to the funds * * * must necessarily be a claim against the bank as escrowee. The escrowee makes no substantial and adverse claim to the funds. Under such circumstances, in bankruptcy cases, the rule is established that summary jurisdiction lies to compel the escrowee to turn over the funds. Collier, On Bankruptcy Vol. 2 § 23.06 at p. 493. No reason for departing from this rule appears in this case."
 
 
 13
 Obviously, Embry and Fort Worth National Bank vigorously resist summary jurisdiction while the trustees are equally positive that the court below acted correctly. At least, we find unanimity on both sides insofar as basic principles utilized in ascertaining if there was such summary jurisdiction. Each party simply struggles for different interpretations of the same precedents. Yet at the outset, we think the hearing before a special master, worth stressing because evidence, parol and documentary, was there adduced and we proceed cautiously before overturning confirmed reports in bankruptcy. In re Garden City Brewery, 7 Cir., 1954, 208 F.2d 377.
 
 
 14
 Appellants and appellees all agree that the district court had jurisdiction of the parties and subject-matter for the prime purpose of a preliminary inquiry to ascertain if the claim is substantial and adverse or merely colorable. Indeed each side cites us to In re Todd Bldg. Corp., 7 Cir., 1949, 172 F.2d 254, 257.
 
 
 15
 Equally well settled, and agreed upon here, is the next proposition that if the claim is substantial and adverse, trustees must then proceed by plenary action, existence of a merely colorable claim permits summary procedure. The point of divergence between appellants and appellees lies in classifying the claim before us. But again we find harmony between these parties when they turn to Harrison v. Chamberlin, 1926, 271 U.S. 191, 194-195, 46 S.Ct. 467, 469, 70 L.Ed. 897, relied upon by the special master in his report, and direct our attention to this passage:
 
 
 16
 "Without entering upon a discussion of various cases in the Circuit Courts of Appeals in which divergent views have been expressed as to the test to be applied in determining whether an adverse claim is substantial or merely colorable, we are of opinion that it is to be deemed of a substantial character when the claimant's contention `discloses a contested matter of right, involving some fair doubt and reasonable room for controversy,' * * * in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense. * * *"
 
 
 17
 Upon affirming our court's decision, reported as In re Gold Medal Laundries, 7 Cir., 1944, 142 F.2d 301, Mr. Justice Frankfurter summarized some principles applicable to the matter now before us, when delivering the opinion in Cline v. Kaplan, 1944, 323 U.S. 97, 98-99, 65 S.Ct. 155, 156, 89 L.Ed. 97:
 
 
 18
 "A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. * * * If the property is not in the court's possession and a third person asserts a bona fide claim adverse to the * * * trustee in bankruptcy, he has the right to have the merits of his claim adjudicated `in suits of the ordinary character, with the rights and remedies incident thereto.' * * * (citing) * * * But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. Harrison v. Chamberlin, 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897. It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. * * * Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court." (Italics appear in the original report.)
 
 
 19
 Firmly fortified with a pleading entitled "Contest of Jurisdiction" and pursuing a course consistent with nonconsent, appellants' position remains invulnerable to any theory of acquiescence to jurisdiction. Yet this is a proceeding under Chapter X and Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L. Ed. 897 cited in the quotation above, also employed by the master and quoted to us by appellants, was not decided under that Chapter; for that matter neither was the Kaplan case from which we took the foregoing passage. "Fort Worth National Bank, as escrowee," according to the master's report, "is merely a stakeholder in possession of funds. It neither has nor asserts any substantial adverse claim to the funds." The master also stated: "From an examination of the escrow, and a consideration of all evidence presented, it is apparent that the funds in question were essentially a security deposit by Muntz TV, Inc. and belonging to it when the petition for reorganization was filed." (Italics supplied.) Embry contends that he constructively received the deposited moneys, obtaining equitable title to them when Muntz placed them in the Bank's hands. Moreover, appellants so called "Contest of Jurisdiction" asserted ownership of Embry and his right to immediate possession.
 
 
 20
 While under the Embry-Muntz agreement, already quoted, the Bank was in actual physical possession of $2400, it, obviously could not and did not assert absolute ownership of such moneys. But we cannot overlook theories of constructive receipt in Embry's hands. See e. g. Williams v. United States, 5 Cir., 1955, 219 F.2d 523, cited to us by appellants, which involved an irrevocable escrow. Indeed, absent any provision in the Embry-Muntz document for refund or return to Muntz of part or all of that $2400 and the instant escrow appears irrevocable. Appellants are entitled to a plenary proceeding because of the posture of facts presented here. In re Standard Gas & Electric Co., 3 Cir., 1941, 119 F.2d 658. But we expressly limit our opinion to the facts involved in this appeal.
 
 
 21
 The judgment of the district court, appealed here, is reversed and remanded with directions to proceed in a manner consistent with the views expressed herein.
 
 
 22
 Reversed and remanded with directions.
 
 
 
 Notes:
 
 
 [1]
 52 Stat. 883, 11 U.S.C.A. § 501 et seq