136 F.2d 18 (1943)
In re CUYAHOGA FINANCE CO.
LAKE SHORE FINANCE CORPORATION
v.
WEIR.
No. 9378.
Circuit Court of Appeals, Sixth Circuit.
June 7, 1943.
*19 Morton M. Stotter, of Cleveland, Ohio, for appellant.
H. Walter Stewart, of Cleveland, Ohio (H. Walter Stewart and Thompson, Hine & Flory, all of Cleveland, Ohio, on the brief), for appellee.
Richard B. Ainsworth, of Philadelphia, Pa. (John F. Davis, of Philadelphia, Pa., Charles J. Odenweller, Jr., of Cleveland, Ohio, Louis Loss, of Philadelphia, Pa., and Richard B. Ainsworth, of Cleveland, Ohio, on the brief), for Securities and Exchange Commission.
Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.
HAMILTON, Circuit Judge.
This case presents the following questions: (a) In a reorganization proceeding under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. §§ 511 to 517, inclusive, does the Bankruptcy Court have jurisdiction to determine in a summary action, set-offs against the debtor's obligation to a pledgee creditor, such creditor having possession of the pledged assets where the creditor declines to file a claim or otherwise consent to the jurisdiction of the court? (b) Assuming the court had jurisdiction, were the findings of the Special Master approved by the court, supported by substantial evidence?
At the commencement of these proceedings, the debtor, The Cuyahoga Finance Company owed appellant, The Utopia Finance Company, $9,000 with interest from April 29, 1941, on which there was pledged 286 shares of the capital stock of The Cuyahoga Acceptance Corporation, an Ohio corporation and a wholly owned subsidiary of the debtor.
The trustee filed an application in the proceedings for authority to redeem the pledge, and in connection therewith asked that the court determine the amount of two alleged set-offs, namely, the amount the creditor owed the debtor for services for the sale of the creditor's capital stock, and the amount the creditor owed the debtor for services of the debtor's employees and for use of its office facilities in carrying on the business of the creditor.
*20 On notice, appellant answered and denied the jurisdiction of the court and, without waiving its plea, alleged that the debtor was indebted to appellant in the sum of $14,078.43 and claimed the debtor was also contingently indebted to it in the sum of $10,065.50 and that it held as security for these indebtednesses, 286 shares of stock of The Cuyahoga Acceptance Corporation. The matter was referred to a Master who reported that the court had jurisdiction and found that the debtor owed appellant, The Utopia Finance Company, the fixed sum of $9,000, plus interest of $450.50 and that Utopia owed the debtor $4,412, with interest of $889.06 and that the debtor was further obligated to the Utopia in an undetermined sum not in excess of $7,000 and also upon a contingent liability which would not exceed $3,000. The court overruled the exceptions of appellant to the Special Master's report and adopted his findings, conclusions and order.
The vital question on this appeal is whether the jurisdiction of the court ceases after restraining a pledgee creditor from disposing of the pledged assets in his possession without the consent of the court or whether such jurisdiction extends to determine set-offs of the debtor without the consent of the creditor. It is settled law that upon the filing of a petition under chapter 10 of the Bankruptcy Act, all property in which the debtor has, or may claim, an interest passes under the control of the Bankruptcy Court, and upon approval of the petition, title vests in the trustee or the debtor in possession as of the date of the filing of the petition. 11 U.S.C.A. § 557, 52 Stat. 888; Gross v. Irving Trust Company, 289 U.S. 342, 344, 53 S.Ct. 605, 77 L. Ed. 1243, 90 A.L.R. 1215; Isaacs v. Hobbs Tie and Timber Company, 282 U.S. 734, 737, 51 S.Ct. 270, 75 L.Ed. 645. The jurisdiction of the court is not limited to the administration of the property which admittedly belongs to the debtor, but also extends to the determination of the question of title. Ex Parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020. To this end the Bankruptcy Court may enjoin creditors collaterally secured from selling or disposing of such collateral without the consent of the court and may make all orders necessary to prevent hindrance or delay in the preparation and consummation of the plan of reorganization. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Railway, 294 U.S. 648, 676, 55 S.Ct. 595, 79 L.Ed. 1110.
In ordinary bankruptcy, if the claim of the creditor is substantial and he has property in his possession which he insists is his own or which he holds as security for a debt of the bankrupt, the court is without jurisdiction to adjudicate the rights of the parties without the consent of the creditor even in a plenary action unless other conditions prescribed by the statute are met. 11 U.S.C.A. § 46, 52 Stat. 854; May v. Henderson, 268 U.S. 111, 116, 45 S.Ct. 456, 69 L.Ed. 870; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 433, 44 S.Ct. 396, 68 L.Ed. 770; Louisville Trust Company v. Comingor, 184 U.S. 18, 26, 22 S.Ct. 293, 46 L.Ed. 413. This rule does not apply in reorganization proceedings. Such proceedings are controlled by the amended Act of 1938, 52 Stat. 883.
One of the purposes of the statute was the enlargement of the jurisdiction of the court. The restrictions of Section 23, 11 U.S.C.A. § 46 were abrogated unless the proceeding degenerated into ordinary bankruptcy. The statute expanded the former Act to give the court in reorganization proceedings such jurisdiction as a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet debts as they matured. 11 U.S.C.A. § 515, 52 Stat. 884.
Under the equity powers in an insolvency proceeding, the appointment of a receiver confers upon the court jurisdiction to decide all questions incident to the preservation, collection and distribution of the assets regardless of citizenship or the amount in controversy. Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 73 L. Ed. 669. Controversies relating to assets of the debtor may be decided in the original suit (Rouse v. Letcher, 156 U.S. 47, 50, 15 S.Ct. 266, 39 L.Ed. 341) or by ancillary proceedings (White v. Ewing, 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67) and the court may issue all writs necessary for the exercise of its equity powers and to protect from interference all property, actually or constructively in its possession. Continental Illinois Nat. Bank v. Rock Island Railway, 294 U.S. 648, 676, 55 S.Ct. 595, 79 L.Ed. 1110; Julian v. Central Trust Company, 193 U.S. 93, 112, 24 S.Ct. 399, 48 L.Ed. 629.
Due to the revolutionary changes in business organization and procedure and the consequent problems of property relationship, bankruptcy courts, under their traditional powers, lagged far behind the swift *21 movement of social and economic conditions and the Congress, in order to make bankruptcy courts instruments for the rehabilitation of financially distressed corporations as distinguished from their liquidation, enacted the statute here in question. The core of the Act is uniting in a bankruptcy court, the traditional law and equity power of courts with authority to administer legal and equitable relief in a single action.
The Act places under the jurisdiction of the court all the tangible and intangible assets of the corporation whether or not in its possession so that in a single action, it may adjust conflicting claims. A distinct purpose of the amendment to the Bankruptcy Act was to subject the administration of the corporation, during the period of reorganization or rehabilitation, to the control of tribunals clothed with authority and charged with the duty to proceed to consummation of a plan or reorganization in a summary way.
In order that the corporation may be quickly rehabilitated, time being in many instances the essence of the proceedings, the court has broad powers to bring into the action all of those who may have claims on the corporate assets. In re Burton Coal Company, 7 Cir., 126 F.2d 447.
It is a basic principle of equity courts to dispose of litigation finally, making as complete decision on all the points embraced in a cause as its nature will admit in order to preclude future litigation and to avoid a multiplicity of suits. Acting pursuant to this principle in reorganization proceedings, courts of bankruptcy make effective use of the doctrine of set-offs and counterclaims. 11 U.S.C.A. § 108, 52 Stat. 878.
In proceedings under this Act great liberality as to form and substance of the pleadings may be indulged in when determining rights and they may be informal so long as they state with reasonable and substantial certainty, the claims of the respective parties. The case here, while begun by a petition and rule of court, was from its commencement treated as a suit in equity. It was referred to a Master and the respective parties presented their witnesses who were cross-examined by counsel. Even though the claims of the trustee were presented in a summary way, it is evident that appellant secured a full hearing on the issues over which it and the trustee were in controversy. To sustain appellant's contention would subordinate substance to form and would cause unnecessary delay in carrying out the reorganization. In our opinion, the court had jurisdiction to determine the set-offs.
The corporate parties to this appeal were engaged in identically the same business and occupied the same offices, and used a common personnel. Their officers and directors were identical and the majority of the voting stock of each was owned by the same individual.
On September 28, 1936, appellant, The Utopia Finance Company, entered into a written contract with the debtor with the approval of the debtor's Board of Directors, employing it to sell for the creditor five thousand shares of its preferred stock at a price of $50 per share for which the debtor was to receive a commission of fifteen percent. Cuyahoga sold 4412 shares of appellant's stock for $220,600, by which it earned under the written contract a commission of $33,090.00. Appellant paid $22,060, a sum equal to ten percent of the gross sales. Before any stock was sold, at an informal meeting of the officers of the corporations, the original contract was orally modified to reduce the commissions to the actual expenses of the debtor incurred in the sale, the Utopia agreeing in connection therewith to lend to the debtor the proceeds of the sale of the stock with interest. The debtor paid its salesmen ten percent or $5 per share for each share of the Utopia stock sold and Utopia reimbursed it.
The Master disregarded both the written and oral contract on the ground of the inter-corporate relationship and found that reasonable and proper compensation to the debtor for services rendered in selling the stock was a sum equal to two percent in excess of the cost of the sale to the debtor. On this basis, the Master found that Utopia was indebted to the debtor in the sum of $4,412 with interest thereon to December 31, 1941, of $899.06, which sums he allowed as a set-off against appellant's claim.
As we understand the Ohio rule, it is not inherently wrong for two corporations having controlling officers in common to contract with each other. The most that can be said against such contracts is that they will be subjected to close judicial scrutiny when challenged in the proper time by an interested party and will be set aside or modified upon a showing of unfairness. Goodin v. Cincinnati & W. Canal Company, 18 Ohio St. 169, 98 Am.Dec. 95: *22 United States Rolling Stock Company v. Atlantic & G. W. R. Company, 34 Ohio St. 450, 32 Am.Rep. 380; Truman v. Coghlin Machinery & Supply Co., 11 Ohio App. 220; Lake Hiawatha Park Asso. v. Knox County Agri. Soc., 28 Ohio App. 289, 162 N.E. 653; Cooper v. Central Alloy Steel Corporation, 43 Ohio App. 455, 183 N.E. 439.
If a contract for services is involved the full adequacy of the consideration must be shown by those who would support the transaction or it may be inquired into and determined by the court on the evidence. Geddes v. Anaconda Mining Company, 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425.
Appellant urges that the Master's finding of the value of the services has no support in the evidence. To this we do not agree.
Appellant agreed in the first instance to pay the debtor for its services three percent more than was found by the Master. The original contract was formally ratified by the corporate Board of Directors. The modified contract did not have the formal approval of the Board. Unless clearly erroneous, concurrent findings of the Master and the District Court will be accepted by this court. We cannot say the findings of the Master on the evidence are clearly erroneous.
Judgment affirmed.