In the Matter of MUNTZ TV Inc., et al.,
Debtors.
Jay MILIN and Sara Milin,
Appellants,
v.
C. Wylie ALLEN, Floyd G. Dana and Robert Friedlander, Trustees of Muntz TV Inc., Appellees.
No. 11510.

United States Court of Appeals
Seventh Circuit.
Jan. 26, 1956.

Abraham W. Brussell, Chicago, Ill. (Hoffman & Davis, Chicago, Ill., of counsel), for appellants.

James Overton Brooks, Joseph W. Grady, Chicago, Ill., for appellees.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

On March 3, 1954, an involuntary petition to reorganize Muntz TV under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was filed in the District Court (two other corporations not here involved were parties to the proceeding).

Appellees, C. Wylie Allen and Floyd G. Dana, were appointed trustees and will be subsequently referred to as such. The trustees, on October 19, 1954, filed a petition entitled "Petition for Turn-Over of Leasehold Deposit from Jay Milin and Sara Milin" (the last two named parties are appellants and will be referred to as such, or in some instances as defendants). The property described in the petition was the sum of $16,000, deposited with the defendants under circumstances to be subsequently related. Defendants entered their special appearance for the purpose of contesting the court's summary jurisdiction. The issue thus raised was referred to a Special Master who held that the court had summary jurisdiction and recommended the order which the trustees sought. The court approved the report and recommendation and, on April 29, 1955, entered an order directing defendants to pay over forthwith to the trustees the sum in controversy. From this order defendants appeal.

The controversy arises by reason of a real estate lease executed October 17, 1952, between Muntz and the defendants, in which Muntz was lessee and defendants lessors of certain real estate located in Detroit, Michigan. The period of the lease was from January 1, 1953 to January 1, 1958, for a term rental of $240,000, payable at the rate of $4,000 per month. The lease as originally executed required Muntz to furnish a surety bond in the sum of $24,000, to guarantee performance on its part. However, on March 2, 1953 (one year previous to the filing of the involuntary petition), a substitute provision was agreed to by the parties and incorporated in the lease, designated as paragraph 37. This paragraph is lengthy, but in view of the nature of the controversy we think it should be set forth. It provides:

"The Landlord herewith acknowledges the receipt of the sum of Sixteen Thousand Dollars ($16,000.00) from the hereinbefore mentioned Tenant as deposited with said Landlord by said Tenant, by its check

Number 13070 dated February 27, 1953, as drawn on the American National Bank and Trust Company of Chicago, of Chicago, Illinois, payable to the order of M. E. Arden Company, and by them endorsed payable to the order of the aforementioned parties of the First Part, the Landlord, which sum the said aforementioned Landlord is to retain as security for the faithful performance of all of the covenants, conditions and agreements as contained and set forth in the Lease hereinbefore referred to between said parties, but in no event shall the Landlord be obliged to apply the same upon rents or other charges in arrears, or upon damages for the Tenants' failure to perform the said covenants, conditions and agreements; the Landlord may so apply the security at their option; and the Landlord's right to the possession of the premises for non-payment of rent or for any other reasons shall not in any event be affected by reason of the fact that the Landlord holds this security. The said sum, if not applied toward the payment of rent in arrears or toward the payment of damages suffered by the Landlord by reason of the defendant's breach of the covenants, conditions and agreements of the aforementioned referred-to Lease, is to be returned to the Tenant when said Lease is terminated, according to the terms therein set forth, and in no event is the said security to be returned until the Tenant has vacated the premises and delivered possession thereof to the Landlord. Said security is to draw no interest. In the event that the Landlord repossesses themselves of the said premises because of the Tenant's default or because of the Tenant's failure to carry out the covenants, conditions and agreements of the hereinbefore referred-to Lease, the Landlord may apply the said security upon all damages suffered to the date of said repossession and may retain the said security to apply upon such damages as may be suffered or shall accrue thereafter by reason of the Tenant's default or breach. The Landlord shall not be obliged to keep the said security as a separate fund, but may mix the said security with their own funds."

The principal contested issue here, as before the Master, is whether the District Court had summary jurisdiction over the subject matter or the parties with respect to the $16,000 in dispute. There is the further issue arising from the trustees' contention that in any event defendants by their acts and conduct in connection with the proceeding waived any objection to such jurisdiction. As already noted, the Master, sustained by the court, concluded that the court had summary jurisdiction. At the same time, the Master held that there had been no waiver on the part of the defendants.

In view of the conclusion which we have reached, we find it unnecessary to discuss or relate the facts relative to the issue of waiver. It may be pertinent to note that the trustees, on May 27, 1954, filed a petition to reject the lease in question and that on the same date the court entered an order of rejection effective as of March 4, 1954.

Defendants' argument appears to be premised upon what we think is an erroneous theory, that the $16,000 was not deposited with them as security for obligations assumed by Muntz, and this notwithstanding that the lease specifically stated, "which sum the said aforementioned Landlord is to retain as security for the faithful performance of all of the covenants, conditions and agreements as contained and set forth in the Lease," as well as numerous other references to the deposit as security. Moreover, in the proof of claim filed by the defendants the $16,000 deposit was specifically designated "as security, under the provisions of said Lease." Defendants, consistent with their theory that this was not a security deposit, argue that Muntz retained neither possession nor title to

any specific property but that possession and title were obtained by defendants from the outset. That argument could be valid only if the deposit was not made for security purposes. Moreover, the quoted provision provides that the deposit, if not used for the purposes therein stated, "is to be returned to the Tenant when said Lease is terminated."

A study of the relevant provision leads to the inescapable conclusion that the deposit was made with defendants by Muntz solely for the purpose of securing payment of the latter's obligations as provided in the lease. It is true that defendants acquired possession of the money, but only for the purpose stated and, in our judgment, title remained in Muntz. It is also true, as pointed out by the defendants, that there was no specific property to which the turn-over order could be directed; in fact, the lease permitted the defendants to "mix the said security with their own funds." We attribute no significance, however, to this facet of the situation. Certainly the case would be rare where a deposit of money for security purposes or any other would be kept segregated from all other funds. Even if such funds were deposited in a bank in a separate account, they would become mingled with those of the bank and the specific property would not be identifiable.

■■ The Master treated the $16,000 item as a security deposit, and we think correctly so. The cases as pointed out by the Master firmly establish the principle that a bankruptcy court has summary jurisdiction over money or property in the hands of a third party, deposited for the purpose of security. No good purpose could be served in discussing such cases in detail. The principle was aptly stated in First Nat. Bank in Houston v. Lake, 4 Cir., 199 F.2d 524, 527, where the court stated:

"The reorganization court is given jurisdiction over the property of the debtor 'wherever located'. 11 U.S. C.A. § 511. And this jurisdiction extends over property of the debtor pledged as collateral security for

debts as well as other property belonging to him. [Citing cases.] The court is likewise given jurisdiction to allow claims of creditors and, with respect to secured claims, 'to determine summarily the value of the security and classify as unsecured the amount in excess of such value'. 11 U.S.C.A. §§ 596 and 597."

In Reconstruction Finance Corp. v. Kaplan, 1 Cir., 185 F.2d 791, 798, the court stated:

"We think cash held as collateral may be dealt with by the reorganization court as any other form of collateral. We do not know of any case in which such cash collateral has actually been ordered turned over to the reorganization trustee over the objection of the creditor, but the power to order such turnover may be inferred from the numerous cases in which the court ordered the reorganization trustee to collect rents and profits from mortgaged realty, or dividends and interest from pledged stocks and bonds, all in derogation of the strict letter of the contract between the debtor and creditor. [Citing cases.]"

Other cases pertinent to the issue under discussion are Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 682, 55 S.Ct. 595, 79 L.Ed. 1110; Mar-Tex Realization Corp. v. Wolfson, 2 Cir., 145 F.2d 360, 363, and In re Cuyahoga Finance Co., 6 Cir., 136 F.2d 18, 20. We have examined the cases relied upon by defendants wherein summary jurisdiction has been denied and think they are not in point. In none of such cases was the court considering a situation wherein money or property was deposited with a creditor as security for the payment of an obligation. Therefore, we think it unnecessary to cite or discuss such cases, other than the recent decision of this court in In the Matter of Muntz TV, Inc., 7 Cir., 225 F.2d 489, wherein it was held that the District Court did not have summary jurisdiction. As will be noted from a reading of that opinion, the appeal was

from the same District Court and from an order in the same corporate reorganization proceeding. In that case Muntz, in accordance with the terms of a lease, deposited $2,400 with a Texas bank as escrowee as adavance payment to the landlord for rent at the rate of $400 per month for six specified months. There, the trustees contended, as here, that the deposit was for security purposes. We rejected that argument because the circumstances under which the money was deposited precluded any possibility that it would ever be returned to Muntz. There, the money was deposited to pay an obligation, while in contrast the money in the instant situation was deposited only as security. Thus, we think that case is clearly distinguishable.

Defendants in their brief state, "* * * in the case at bar under the summary proceedings and the resulting judgment order there was a 'prejudging' in the sense that the adjudication was in essence that the Milins had no property rights in the $16,000," and again, "They [the trustees] sought and obtained a *final* disposition in a summary proceeding." We think this is a clear misapprehension of the situation. No issue has been decided other than that the court had summary jurisdiction to order the deposit turned over to the trustees. In Reconstruction Finance Corp. v. Kaplan, 1 Cir., 185 F.2d 791, 798, the court, following the statement heretofore quoted, said:

> "In our foregoing comments on the power of the reorganization court to deal with moneys of the debtor held as collateral security, we do not mean to prejudge the status of the cash held by RFC in the so-called cash collateral account mentioned earlier in this opinion. We understand the claim of RFC to be that this cash belongs outright to it and is not in any sense 'property of the Debtor' within the meaning of paragraph 5 of the order of the district court now under review. This issue is not now before us for determination."

In the instant situation, defendants claim, as we understand, that there has been a default by Muntz in its lease obligations and that as a result the $16,000 belongs to them. That issue, however, is not before us for determination. Their substantive rights after compliance with the turn-over order will be no different than they were before. They are entitled to a hearing and adjudication thereon. The only difference is that such rights must be adjudicated in the bankruptcy court rather than in some other court in a plenary proceeding.

The order appealed from is

Affirmed.