Birdie Amsterdam, J.
Plaintiff seeks to recover damages and alleges in his complaint four causes of action: the first, in conversion, the second, in conspiracy, the third, in duress and the .-fourth, in usury. The case was tried without a jury.
The undisputed evidence in essence established that plaintiff and defendant Kessler were the sole stockholders of Kesdiet Realty Corp. (hereinafter referred to as K Corp.) Plaintiff owned 49 shares of the stock and Kessler 51 shares. K Corp. ’s sole asset was some 20 odd acres of land, purchased for the purpose of constructing houses thereon for resale. On August 30, 1954 plaintiff agreed to purchase Kessler’s stock for $112,274.72, of which $20,000 was to be paid immediately, $30,000 on November 1, 1954 and $62,274.72 on or before January 15, 1955. The agreement was oral. Payments were to be made to defendant Julius Bregman (hereinafter referred to as J B), as attorney for Kessler. Plaintiff pledged his stock as collateral security for his performance. All of the stock and the resignations of seller and purchaser as officers were delivered to defendants Bregman and Bregman (a partnership consisting of J B and his brother Hyman Bregman) as escrow agents.
*423 The last installment was not paid when due. Thereafter J B received and accepted the following payments: $10,000 on May 21, 1955, $22,274.72 on June 6, 1955 and $10,000 on November 18, 1955. Thus a total of $92,274.72 was paid.
On November 18, 1955 J B told plaintiff that the balance of $20,000 would have to be paid “ in the immediate future without delay ”. At the same time plaintiff gave him a check for $10,000 postdated December 16, 1955 and stated that the entire balance would be paid in early January.
On December 6, 1955 defendants formed a corporation known as Hyler Holding Corp. (hereinafter referred to as H H Corp.) Kessler and his family were the sole stockholders thereof. On December 12, 1955, without plaintiff’s knowledge or consent, the defendants caused a deed to be executed by K Corp. conveying the greater part of its realty to H H Corp. and had the deed recorded on December 16, 1955. This was done without having held any meeting, without any order of the board of directors permitting its execution and without any consideration.
Plaintiff first learned thereof in early January at which time he demanded the return of his 49 shares of stock and the re-transfer of the realty to K Corp. and offered to pay the amount of his indebtedness of $20,000 plus accrued interest. Defendants refused unless plaintiff paid an additional $18,750, of which, $15,000 was to be paid to Kessler and $3,750 to Bregman and Bregman. Defendants maintained that plaintiff had forfeited all including the 90-odd thousand dollars he had paid to defendants toward the stock purchase agreement.
Plaintiff testified in substance that by reason of the aforesaid conveyance, he was prevented from proceeding with the building project — prevented from conveying houses he had contracted to sell — prevented from obtaining mortgages on building loans — that time was of the essence in these matters — that a lawsuit would not assure immediate relief, so that he was “forced” to submit to defendants’ demands. He further testified that he was unable to pay $38,750 at once; that defendants then demanded that it be paid within six months; that under protest he agreed to do so; that he paid $20,000 on February 9, 1956 whereupon defendants caused H H Corp. to reconvey to K Corp. two lots out of the 14 lots that K Corp. had on December 12 conveyed to II H Corp.; that on July 2, 1956 he gave J B two certified checks, one for $15,000 to the order of Bregman and Bregman as attorneys for Kessler, and the other for $3,750 to the order of Bregman and Bregman, whereupon defendants caused H H Corp. to retransfer title to the balance of the lots to K Corp. and plaintiff then received all the stock.
*424 Defendants claim and so testified that plaintiff was selling and conveying the assets of K Corp. without notifying J B or Kessler and contend that the transfer of K Corp.’s assets to H H Corp. was to protect Kessler’s stock. Defendants deny that plaintiff offered to pay the balance of $20,000 with accrued interest in January, 1956. They contend that the $15,000 that plaintiff paid to Kessler was voluntarily paid; that it was in consideration of Kessler’s forbearance to take steps to enforce his remedy for payments because of plaintiff’s default. They further contend that the $3,750 paid to Bregman and Bregman was for legal services rendered by the latter for K Corp. and for plaintiff, which plaintiff had agreed to pay and did pay voluntarily.
In the light of all of the circumstances and credible evidence herein I am of the considered opinion that the stock purchase agreement was never legally terminated. Defendants’ acceptance of late payments constituted a waiver of previous defaults and the defendants could not place plaintiff in default without notice to pay the balance within a reasonable time by a fixed, definite date (Toplitz v. Bauer, 161 N. Y. 325). On December 12, 1955 when defendants caused the conveyance of K Corp.’s assets to H H Corp. the time of performance of the agreement had been extended at least until December 16, 1955 by J B’s acceptance on November 18, 1955 of plaintiff’s check dated December 16, 1955.
Assuming arguendo that the agreement was legally and properly terminated, Kessler did not acquire title to the pledged stock since he did not purchase or acquire it in accordance -with the law obtaining between pledgor and pledgee (Lien Law, art. 9; Taylor v. Goelet, 208 N. Y. 253; De Witt v. Patterson, 282 App. Div. 827). When and if there is a default, a pledgee may not sell the pledged property to himself and he may not sell it at a private sale in the absence of an agreement to that effect, and even if the agreement gives him these rights he is still under a duty to make an honest attempt to obtain competitive bidding from persons likely to create a market. These are common-law requirements imposed by maxims of equity which the courts have consistently imposed (Matter of Kiamie, 309 N. Y. 325; Mullen v. Quinlan & Co., 195 N. Y. 109; Cole v. Manufacturers Trust Co., 164 Misc. 741). In the case at bar admittedly there was no notice of sale and there was no sale.
Not having legally acquired title to the pledged stock, Kessler at no time was entitled to more than the balance of the purchase price and interest (Jones v. National Chautauqua Bank, 272 App. Div. 521, 526). A demand in excess of that amount, or any. *425 imposition of more onerous terms upon the pledged security as a condition for releasing it constituted a conversion. The compliance with such a demand was in effect duress of property (Kilpatrick v. Germania Life Ins. Co.. 183 N. Y. 163; Murr v. Western Assur. Co., 50 App. Div. 4). (See, also, Adrico Realty Corp. v. City of New York, 250 N. Y. 29; Hornstein v. Paramount Pictures, 37 N. Y. S. 2d 404, affd. 266 App. Div. 659, affd. 292 N. Y. 468.)
The facts and circumstances herein have established in my opinion that the defendants unlawfully conspired to render the pledged stock valueless by transferring the assets of K Corp. to H H Corp. (Kono v. Roeth, 237 App. Div. 252.)
Furthermore, the agreement for and the payment of the additional sum of $15,000 to Kessler for a forbearance for a period of six months within which to pay the balance constituted a usurious agreement. A forbearance to extend the time of payment of an existing debt in consideration of the payment of more than the legal rate of interest is usurious and void even though there has been no loan (General Business Law, §§ 370, 371, 373; London v. Toney, 263 N. Y. 439; Bonetti v. United Beauty Supply Co., 31 N. Y. S. 2d 463). Thus there is no legal basis or justification for Kessler’s retention of the moneys exacted above the contract price and accrued interest.
However with respect to the $3,750 paid to Bregman and Bregman, from the weight of the credible evidence I am of the considered opinon that that was in payment of an agreed fee for legal services rendered and was voluntarily made.
In sum, I am satisfied and find that plaintiff is entitled to judgment in his favor against the defendants in the sum of $15,000 without any interest however.
All motions upon which decision was reserved are resolved in accordance with this determination and the clerk is directed to enter judgment to this effect.