266 F.2d 833
 William D. PETTIT and Thomas J. Crawford, as Trustees for
Swan-Finch Oil Corporation, Appellees,
v.
OLEAN INDUSTRIES, INC., American canuck Petroleums, Ltd.,
American Leduce Petroleums, Ltd. and Penn Canadian
Oil Co., Appellants.
 No. 156, Docket 25315.
 United States Court of Appeals Second Circuit.
 Argued Feb. 11, 1959.
Decided April 29, 1959.
 
 Leo B. Mittleman, New York City, for appellants.
 George C. Levin, New York City, for William D. Pettit and Thomas J. Crawford, trustees, appellees.
 Kaye, Scholer, Fierman, Hays & Handler, New York City, for debtor.
 Milton Kunen, New York City, for Swan-Finch Oil Corp., appellee.
 David Ferber, Asst. Gen. Counsel, Thomas G. Meeker, Gen. Counsel, Washington, D.C., Richard V. Bandler, Sp. Counsel, Kiva Berke, Atty., S.E.C., New York City, Arthur Blasberg, Jr., Atty., S.E.C., Washington, D.C., for Securities and Exchange Commission.
 Before HAND and LUMBARD, Circuit Judges, and MADDEN, Judge, United States Court of Claims.
 HAND, Circuit Judge.
 
 
 1
 The appeals are from two orders of Judge Palmieri, entered in a voluntary Reorganization Proceeding under Chapter X of the Bankruptcy Act, 11 U.S.C.A. 501 et seq., brought by Swan-Finch Oil Corporation, incorporated in New York. The plaintiffs are the trustees appointed in the proceeding and the defendants are depositors named in eight bank accounts in the Doylestown Bank in Pennsylvania, and in one account with the Lawrence Warehouse Company, a California corporation, doing business in New York. Judge Palmieri enjoined the bank and the warehouse from paying any part of these accounts to the payees and further assumed summary jurisdiction over any claims to share in the distribution of the proceeds of the accounts. No dispute arises on these appeals as to the injunction against payment of the accounts; but two questions do arise as to the assertion of jurisdiction over the distribution of the proceeds. The first is whether an appeal lies from such an interlocutory order, and the second is whether, if it is appealable at all, the proceeding may be summary or must be by action in the District Court.
 
 
 2
 The facts, so far as it is necessary to state them, are as follows. Substantially all the activites of the Debtor were confined to transactions in the shares of subsidiary companies, and for the purposes of these appeals it may be treated as though it were not an operating corporation at all. The bank accounts involved in the Doylestown proceeding were made up of deposits by eight separate corporations. One of these was 'Olean Industries, Inc.,' all of whose shares had been owned by the Debtor, but had been pledged to another of the depositors which we shall speak of as 'Leduc,' and which had transferred them to its wholly owned subsidiary, 'Canuck.' The Accounts of 'Olean Industries,' of 'Leduc' and of 'canuck' in the Doylestown Bank contain about $25,000 some part of which are proceeds received from the Olean company; and the accounts of Keta Gas & Oil Company and Penn Canadian Oil Co. in the same bank consist of $14,600 of proceeds of the Keta Gas & Oil Company. The Source of the residue of the eight accounts amounting to less than $2,000 is not clear and we shall disregard it. The 'Keta' income came from a corporation, all of whose shares the Debtor had owned, but had transfered to another corporation, 'Doeskin,' and the Debtor's interest in that account must await the outcome of another appeal. The account in the Lawrence Warehouse Company was made up of proceeds from the operation of the Olean company.
 
 
 3
 As we have said, the Olean shares had been pledged to a Canadian corporation and assigned to its wholly owned subsidiary. The Debtor's note, for whose payment they were pledged, contained a power of sale in the following words: 'to sell * * * at any broker's board, or at public or private sale, * * * without either demand, advertisement or notice of any kind * * *. At any sale hereunder the Lender may itself purchase * * * the property * * *. In the event of any sale or other disposition of any of the security, after deducting all costs and expenses * * * the Lender may apply the residue of the proceeds of such sale or other disposition to the payment of reduction * * * of the Liabilities * * * returning any overplus to any of the undersigned, and the undersigned to remain liable for any deficiency.' Acting under this power, the holder of the pledge, 'Canuck,' on July 5, 1957 demanded payment by the Debtor of the demand note of $500,000, and gave notice that on the 9th it intended 'to deal with the property deposited and pledged with us * * * in such manner as we consider necessary to protect our interest and as permitted under the terms of said Demand Note.' On the 10th it wrote that 'on July 10, 1957, at the hour of 11 o'clock A.M. we purchased for our own account One thousand (1000) shares of the Capital stock of Olean Industries, Inc. held by us as collateral for your note.'
 
 
 4
 First, as to the proceeds from the Olean shares. Sections 596 and 597 of Title 11 U.S.C.A., give the District Court in a reorganization proceeding under Chapter X summary jurisdiction to determine the validity and amount of claims against the Debtor, 'to determine summarily the value of the security' of secured claims, 'and classify as unsecured the amount in excess of such value.' There can be no question therefore that, if the claim of 'Leduc,' assigned to 'Canuck,' was not foreclosed, Judge Palmieri had jurisdiction summarily to determine the validity and amount of the security-- i.e. of the Olean shares. First National Bank in Houston, Texas v. Lake, 4 Cir., 199 F.2d 524; In Matter of Muntz TV, Inc., 7 Cir., 229 F.2d 228. Indeed, it is difficult to distinguish in law the decision of the Sixth Circuit in In re Cuyahoga Finance Co., 6 Cir., 136 F.2d 18, where the bankruptcy court assumed summary jurisdiction over the debtor's claims against a secured creditor so far as they could be used as set-offs against the creditor's claim against the debtor.
 
 
 5
 In the case at bar the appellants rely upon the fact that 'Canuck' had foreclosed the pledge and become an absolute owner before the petition was filed. There is, however, no evidence of what constituted the 'purchase' of the shares, especially whether the pledgee made any effort to secure outside bidders by means of whom the value of the pledge could be measured. So far as appears, the pledgee assumed that the property was worth no more than the debt, and that it might assume the dual office of seller and buyer and take over the pledge without any attempt at an objective appraisal. That has been universally denied as a lawful interpretation even of such broad powers as those granted here; for a 'sale' presupposes two parties who shall in some measure actually compete as to value. Such powers establish a fiduciary relation between the pledgor and the pledgee, and may not be exercised without reasonable regard for the pledgor's right. Matter of Kiamie's Estate, 309 N.Y. 325, 130 N.E.2d 745; Gins v. Mauser Plumbing Supply Co., 2 Cir., 148 F.2d 974, 979; Cole v. Manufacturers Trust Co., 164 Misc. 741, 299 N.Y.S. 418; Deitch v. Kessler, 13 Misc.2d 421, 177 N.Y.S.2d 792, 796; 38 Col.L.Rev. 923. Indeed, such a sale is equivalent to a 'strict foreclosure,' to control which was one of the earliest exercises of equitable intervention. Restatement of Security 55(1) Comment (a). In the absence of anything more than the two letters in evidence the supposed foreclosure of the pledge was a nullity. We hold therefore that the order was right in assuming summary jurisdiction to determine the interests in the deposits in the Doylestown Bank so far as these arose from any proceeds of the Olean shares, or Olean operations.
 
 
 6
 There remains, however, the question whether, since the order taking summary jurisdiction is interlocutory, we have any formal jurisdiction over the appeal and that depends, upon whether the order, so far as it takes jurisdiction over the income arising from the Olean shares, is to be regarded as made in a 'proceeding in bankruptcy' or as made 'in a controversy arising in a proceeding in bankruptcy,' (47(a) Title 11). It is well settled that before any sale in foreclosure the ascertainment of the validity and amount of the security for a claim against the debtor is a 'proceeding in bankruptcy.' Coder v. Arts, 213 U.S. 223, 238, 29 S.Ct. 436, 442, 53 L.Ed. 772; Columbia Foundry Co. v. Lochner, 4 Cir., 179 F.2d 630, 635, 14 A.L.R.2d 1349; In re Greenstreet, Inc., 7 Cir., 209 F.2d 660, 662. We assume that, when a secured creditor sells the security to a third person any challenge of the buyer's title by the debtor is a 'controversy' even if the sale be only 'colorable.' On the other hand we think that, when the pledgee himself buys in the pledge at a sale which is only colorable, so that his legal position remains what it was before: i.e., that of a pledgee in possession, the debtor's challenge of such a sale is a first step in a continuous proceeding 'to determine summarily the value of the security' under 597. Certainly for practical purposes it is only such a step, for it merely clears the ground for the liquidation of the claim by an appraisal of the validity of the claim and the validity and value of the security. We can perceive no antecedent reason for supposing that, although other interlocutory decisions of the constituent steps in liquidating the claim are appealable, the determination of the validity of the pledgee's effort to change his position to that of an owner, should be an exception. Nor can we find anything in the language of Chapter X that demands such a conclusion; for, to repeat, the purpose of the inquiry into the validity of the sale is only one constitutent of the definitive liquidation of the claim.
 
 
 7
 The dispute over the Keta shares is certainly a 'controversy.'
 
 
 8
 We affirm the order so far as it affects any income from the Olean shares; we dismiss the appeal so far as the order affects the income from the Keta shares.
 
 
 9
 LUMBARD, Circuit Judge (dissenting).
 
 
 10
 I dissent from so much of the court's decision as determines that the order appealed from was an interlocutory order made in 'a proceeding in bankruptcy' and was therefore an appealable order under 11 U.S.C.A. 47. I would hold that no interlocutory order assuming summary jurisdiction to decide an asserted claim of right on the merits is appealable under 11 U.S.C.A. 47, because every such order is entered in at least partial disposition of 'a controversy arising in a proceeding in bankruptcy' and is therefore rendered unappealable by that section. See, e.g., In re Christ's Church of the Golden Rule, 9 Cir., 1944, 172 F.2d 523. I think that the contrary result reached by the court disregards the statutory language and creates the anomaly that in deciding the question of appealability this court must first determine the merits of the appeal itself.
 
 
 11
 The first issue presented is whether the order assuming summary judgment to decide the question of title to the contested accounts is an appealable order. This question is governed exclusively by the terms of 11 U.S.C.A. 47.[1] Since it is conceded that the order is an interlocutory order within the meaning of that section, the entire dispute concerns whether the order was entered in a 'controversy arising in a proceeding in bankruptcy,' in which case because it is interlocutory it would be unappealable at this point in the litigation; or whether it was entered in a 'proceeding in bankruptcy' in which there was no 'controversy' in which case the interlocutory order would be appealable. The standard and until now the workable criterion which governs the determination whether a 'proceeding in bankruptcy' contains a 'controversy' has been whether the claimant raises a dispute with regard to the propriety of including the property in the estate for distribution, rather than a question with regard to the administration of the estate once it is amassed. If a question of the extent of the estate is raised, a 'controversy' is presented in the 'proceeding.' See 2 Collier on Bankruptcy 24.28; Taylor v. Voss, 1926, 271 U.S. 176, 46 S.Ct. 461, 70 L.Ed. 889. Such a 'controversy' is raised whether or not the claim asserted as the basis of a right to a plenary hearing is substantial. The determination that the claim is 'without color of merit' and that summary proceedings are therefore appropriate without consent, is merely a preliminary disposition on the merits of the controversy created by the claim. Harrison v. Chamberlin, 1926, 271 U.S. 191, 194-195, 46 S.Ct. 467, 469, 70 L.Ed. 897.
 
 
 12
 The second and wholly different question is presented by the merits of the appeal, namely, whether Judge Palmieri correctly assumed summary jurisdiction to decide the question of entitlement to the proceeds of the subject accounts. Had there been no claim of foreclosure, it would be incontestable that summary proceedings are authorized by 597 of Title XI because Canuck admits that it gained possession of the Olean stock by a pledge from the debtor. In such a case 511[2] and 597[3] invest a Chapter X court with constructive possession of the pledge and summary jurisdiction over the secured claim, see e.g., In re Muntz TV, Inc., 7 Cir., 1956, 229 F.2d 228; cf., In re Cuyahoga Finance Co., 6 Cir., 1943, 136 F.2d 18, although in an ordinary bankruptcy court property held by a pledgee is apparently not in the actual or constructive possession of the court so that upon the pledgee's timely objection the trustee must be remitted to plenary suit. See e.g., Seemann v. Nat. Bank of Commerce, 5 Cir., 1940, 112 F.2d 378.
 
 
 13
 The question whether summary proceedings are proper here therefore turns entirely on whether the asserted foreclosure of the pledge is a sufficiently substantial adverse claim to require plenary determination within the rule of Harrison v. Chamberlin, supra, 271 U.S. at page 195, 46 S.Ct. at page 469, that only a claim that is not 'plainly without color of merit' will suffice to oust the summary jurisdiction. The reason for this rule is rooted in the need for swift administration of the estate: if every asserted claim however frivolous required plenary proceedings the collection of the estate could be indefinitely delayed. There thus has developed the practice of holding a hearing for the purpose of determining whether the claim of right asserted is colorable, and the result of the hearing is an order, such as was entered in this case, either granting or denying a plenary suit. The court here has affirmed the denial of plenary proceedings on the ground that the claim of foreclosure advanced by Canuck is insufficient as a matter of law and therefore not 'colorable.'
 
 
 14
 The order from which this appeal is sought, as the court chooses to construe it, is one which decides only that the claim of a prior foreclosure as thus far advanced and supported is 'plainly without color of merit' so that the summary jurisdiction is not ousted. The first question with which we are confronted is therefore whether this order was entered in a 'proceeding' in bankruptcy which contained a 'controversy.' Since there can be no question now that a controversy is raised by the assertion of a claim of title adverse to the estate, see Taylor v. Voss, supra, the order is on its face an unappealable interlocutory order under 11 U.S.C.A. 47. See In re Federal Photo Engraving Corp., 2 Cir., 1931, 54 F.2d 628. The court avoids this result by holding first that the trial court was right in finding that the claim is insubstantial, and second that because the claim is insubstantial there is no longer anything to be decided which cannot be decided summarily under the authority of 596 and 597, and there is therefore no longer a 'controversy' in the proceedings.
 
 
 15
 This approach and result seem to me plainly wrong under 47 for two reasons. First, the basis of Judge Palmieri's order below was a preliminary determination on the merits of the asserted claim of title. It requires remarkable semantic agility to describe an order which purports to effect a tentative resolution of a dispute over title as not having been made 'in' the controversy of which it largely disposes. And it is equally difficuit to justify a holding that an order such as this one, which whould never have been entered unless a dispute as to title had been tendered in order to oust the summary jurisdiction, was not made in the 'controversy' which it substantially terminated. My colleagues reach their result only by finding a relationship between the propriety of summary jurisdiction, which we all agree was proper here, and the existence of a controversy in the summary proceeding.
 
 
 16
 But whether a controversy existed in the proceedings below for purposes of 47 (the only purpose for which this question ever need be decided) is ordinarily and in this case entirely unrelated to the question whether summary proceedings are appropriate. Whether a controversy exists depends solely upon whether the claim asserted affects the extent rather than the administration of the estate; whether summary proceedings are correct depends in the first instance on whether the property is in the actual or constructive possession of the court, and if it is not, then upon whether the claim is substantial, since insubstantial claims will not be permitted to delay collection of the estate. The fact that on a preliminary hearing it is possible to say that the claim presented appears insubstantial has never until now been held to affect the question whether a controversy exists. Cf. Texas & New Orleans R. Co. v. Phillips, 5 Cir., 1954, 211 F.2d 419.
 
 
 17
 There is one situation in which these two questions can properly be said to overlap, but despite the court's implication to the contrary, it is not presented here. Although 597 is not addressed to the question of appellate jurisdiction, in connection with 511 it does impliedly announce the rule that for purposes of summary proceedings under Chapter X security in the hands of a creditor shall be deemed to be in the constructive possession of the court, thus altering the rule in ordinary bankruptcy. See, e.g., In re Muntz TV, supra. The purpose of these provisions was to compel secured creditors to participate in the general plan of reorganization, which would not have been possible under the rule which had developed in ordinary bankruptcy. See, In re Cuyahoga Finance Co., supra. It is consistent with this purpose to attach to these provisions the consequence that the mere assertion of a security interest in property does not raise a controversy within the meaning of 47, and that a proceeding which is under 597 is devoid of a controversy.
 
 
 18
 But the claim below was not predicated on the mere assertion of a security interest in property; it was based solely on the assertion of an adverse title derived from a prior foreclosure as to which 597 is irrelevant.[4] The decision of the question of the adequacy of the foreclosure has nothing to do with proceedings under 597, which by its terms is restricted to cases in which a security interest is claimed. It is only by deciding on appeal and on the merits that the claim of foreclosure is insubstantial that this court can say and repeat that 'the purpose of the inquiry into the validity of the sale is only one constituent of the * * * liquidation of the claim,' since the statement necessarily assumes that the question of the validity of the foreclosure is now concluded. Nor is this assumption hidden. The court itself expressly confines its approach to cases in which it first determines that the pledgee 'buys in the pledge at a sale which is only colorable, so that his legal position remains what it was before * * *' This appellate bootstrapping is the more improper because the question of the adequacy of the foreclosure is in fact not concluded by this appeal, and evidence can still be introduced below to give it further color.[5] See Harrison v. Chamberlin, supra.
 
 
 19
 In short, there is nothing in the language of 47 to support the court's construction of it, and 597 is irrelevant until the merits are decided and only dubiously relevant once they are since the decision is interlocutory.
 
 
 20
 Mr second and perhaps more important reason for rejecting this view is that it renders the appellate provisions of the Act unique in that they require this court to determine the merits of every attempted appeal in order to decide the question of appealability. This, unless this court finds that the claim of right was in fact without substance, the order denying a plenary hearing was made in a 'controversy' and is unappealable. And if the summary jurisdiction was improperly assumed because the claim was not without substance, then because the order, though erroneous, was made in a 'controversy' this court has no appellate jurisdiction and must dismiss the appeal.
 
 
 21
 This is precisely what the court must have done with regard to the appeal from the assumption of summary jurisdiction with regard to the claim of title to the Keta shares. It must have found first, that there was a substantial adverse claim of right advanced; and second, that there is therefore a 'controversy' presented in the proceedings. Yet instead of reversing the order below, it dismisses the appeal because interlocutory orders entered in 'controversies arising in proceedings' are not appealable. Thus having had the merits determined in his favor, the appellant is dismissed without relife.
 
 
 22
 It seems to me that a construction of a statute governing appellate jurisdiction which allows appeal only from orders which are correct and rejects appeals if the order appealed from is incorrect-- which in effect allows appeals only for the purpose of affirmance-- ought to be skeptically regarded unless the statute itself plainly commands such a strange and impractical result. I find no such command in the language of 11 U.S.C.A. 47, and the court demonstrates none; and nothing in the apparent purpose of the section points to so novel a result.
 
 
 23
 Nor is the decision made more palatable because the court confines it to cases in which the pledgee himself is still in possession. Obviously foreclosures by pledgees can be validly made, and equally obviously trial courts can err in determining to assume summary jurisdiction over such claims. Yet if they do we cannot hear the resulting appeal. We can hear it only if we first find that the claim is without substance and that the trial court was right. An anomalous result is not greatly improved by being confined to a limited class of cases.
 
 
 24
 Furthermore since this appeal has been allowed from the assumption of summary jurisdiction and the appellants are not barred by this court's decision from introducing additional evidence to establish the validity of their foreclosure on the remand to the trial court, practically nothing has been accomplished by it. The preferable rule, and one clearly within the statutory language, would be to delay such an appeal until the trial court enters an order on the merits upholding or denying the claim of title to the contested funds.
 
 
 25
 It might of course be argued that by allowing appeals from the assumption of summary jurisdiction the waste of improper summary proceedings will be avoided, thus making even the added delay of unsuccessful appeals worthwhile. I have some doubt that this would be sound judgment; but in any event the question is peculiarly one for the Congress involving as it does a question of policy as to which any decision must be essentially arbitrary. In any case however this statute cannot have been intended to vindicate such an interest because, as the court reads it, the very appeals on which such errors below would be found and corrected must instead be dismissed. And it is no answer whatever to say that the lower court will note that we dismissed the appeal and heed the implied mandate. To rely on the lower court's adoption of the implication is really to treat the order as appealable in the first place, and thus to read out of the statute the distinction based on the existence of a 'controversy.' Although little utility may be apparent in the distinction when it is applied to a case such as this, it is hardly this court's prerogative merely to ignore it.
 
 
 26
 Moreover, apart from the confusion to which the history of this provision has given rise, see e.g., Maclachlan on Bankruptcy 199, 361, it is not apparent that the distinction it creates is without utility. While it seems plain that interlocutory appeals from orders made in the course of administration of the estate are required if for no other reason than to prevent inordinate delays to those involved in protracted proceedings, it might well have appeared to the Congress that 'controversies' over title were sufficiently separable and sufficiently like civil suits to be treated like them under the final judgment rule. We have in the past held that controversies giving rise to plenary proceedings are to be so regarded, Matter of Finkelstein, 2 Cir., 1939, 102 F.2d 668, and I see no reason to hold otherwise as to those arising in summary proceedings.
 
 
 27
 Finally, it seems probable that the new interlocutory appeals Act, 28 U.S.C. 1292(b) may appropriately be applied to those cases in which the order assuming summary jurisdiction is sufficiently final and dispositive of the questions presented by the claimant to warrant its use. The court's construction of 11 U.S.C.A. 47 in substance renders all such orders appealable, and apart from all other reasons is therefore objectionable insofar as it is inconsistent with judicial economy.
 
 
 28
 As to the merits, I agree entirely with my colleagues. For the above reasons, however, I would dismiss the appeal.
 
 
 
 [1]
 Section 47(a) in its relevant words states: 'The United States courts of appeals * * * are invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact * * *'
 
 
 [2]
 Section 511 provides: '* * * the court in which a petition is filed shall * * * have exclusive jurisdiction of the debtor and its property, wherever located.'
 
 
 [3]
 Section 597 provides: 'For the purposes of * * * classification, the judge shall, if necessary, upon the application of the trustee, * * * fix a hearing upon notice to the holders of secured claims * * * to determine summarily the value of the security and classify as unsecured the amount in excess of such value * * *'
 
 
 [4]
 The court does not discuss the implication of the Seventh Circuit in In re Muntz TV, Inc., 7 Cir., 1956, 229 F.2d 228, that 511, 596 and 597 would authorize summary proceedings despite a substantial claim of foreclosure, or the contrary implication of First National Bank in Houston, Texas v. Lake, 4 Cir., 1952, 199 F.2d 524, 533, certiorari denied 1953, 344 U.S. 914, 73 S.Ct. 337, 97 L.Ed. 705 and so for purposes of this decision I will assume that these sections alone would not suffice. It appears however that Judge Palmieri proceeded on this theory below, and that he never in fact made any determination that the claim of foreclosure asserted was 'plainly without color of merit.' Instead, he assumed that the claim was substantial, and ruled that it was nevertheless within the summary jurisdiction of the Chapter X court without consent. The determination that the claim plainly lacks merit is thus made here for the first time
 
 
 [5]
 This is particularly significant here, because the pledgee was never confronted with a ruling below that his claim lacked merits as a matter of law. See footnote 4 at page 838 of 266 F.2d. Had he been he might have come forward with further substantiation of a valid sale